IN THE UNITED STATES DISTRICT COURT FOR
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABBY B. CONLEY, | CIVIL DIVISION |
| Plaintiff, | No.: 05-CV-76 E |
| -vs- | Judge Sean J. McLaughlin |
| COUNTY OF ERIE, ERIE COUNTY OFFICE OF CHILDREN AND YOUTH a/k/a ERIE COUNTY CHILD WELFARE SERVICE, RICHARD SCHENKER, individually and in his capacity as County Executive of Erie County, Pennsylvania, PETER CALLAN, individually and in his capacity as Erie County Director of Personnel, DEBRA LIEBEL, individually and in her capacity as Executive Director, Erie County Office of Children and Youth a/k/a Erie County Child Welfare Service, and JOHN A. ONORATO, ESQUIRE, individually and in his capacity as Erie County Solicitor, | |
| Defendants. | |

## REPLY TO PLAINTIFF'S MOTION TO COMPEL

AND NOW comes the Defendants, COUNTY OF ERIE, ERIE COUNTY OFFICE OF CHILDREN AND YOUTH a/k/a ERIE COUNTY CHILD WELFARE SERVICE, RICHARD SCHENKER, individually and in his capacity as County Executive of Erie County, Pennsylvania, PETER CALLAN, individually and in his capacity as Erie County Director of Personnel, DEBRA LIEBEL, individually and in her capacity as Executive Director, Erie County Office of Children and Youth a/k/a Erie County Child Welfare Service by and through their attorney, Edmond R. Joyal, Jr., Esquire and Law Office of Joseph S. Weimer, and set forth their opposition to the Motion to Compel filed by Plaintiff.

1. Plaintiff has been involved in protracted litigation with the County of Erie as a result of her termination of employment.

2. This litigation included the filing of a grievance against the county, said grievance is still active.

3. In addition to the grievance, Plaintiff also filed an unfair labor practice charge against the County and a hearing on that charge was requested and a date was set.

4. During the course of the administrative litigation process Plaintiff was represented by Anthony Angelone, who serves as co-counsel in this matter.

5. Mr. Angelone was provided with numerous documents during that litigation, including many of the documents that were included in Plaintiff's discovery requests.

6. It is unclear to Defendants whether copies of those documents were retained by Mr. Angelone or provided to Mr. McNair at the instigation of this matter in this Honorable Court.

7. Discovery in this matter was undertaken and the deposition of Plaintiff, Abby Conley, was taken on September 6, 2005. The deposition began at 10:30 AM and ended at 7:28 PM. The transcript without exhibits is 409 pages in length and contained 39 marked exhibits.

8. At the time of the taking of the deposition, Mr. McNair informed the reporter that he would not be ordering a transcript of the deposition and Plaintiff did not waive signature.

9. The original deadline for discovery in this matter was established by the Court to be October 3, 2005.

10. Subsequent to the taking of the deposition, on September 26, 2005, Plaintiff submitted her Interrogatories and Request for Production of Documents to the Defendants.

11. Plaintiff moved to extend discovery on September 21, 2005, and discovery was extended to December 2, 2005. (Docket entries 22 and 23).

12. On 11/30/2005, the Court extended discovery until February 3, 2006 (Docket entry 28).

13. Contrary to the implications contained in Mr. McNair's motion and recitation of facts, conversations were held by telephone between a female from his office and Tina Slahtovsky, a paralegal with counsel for the Defendant.

14. During those conversations Ms. Slahtovsky informed Plaintiff's counsel that she was working on the responses and that the documents that had been provided to undersigned counsel took up three bankers boxes.

15. It was presumed by counsel that the request for extension by Plaintiff, which was not opposed by Defendants' counsel, was intended to provide both sides with the opportunity to complete discovery.

16. Defendants strongly disagree with the representation made by counsel that the extensions of discovery were "solely due to the . . . failure to respond in a timely fashion to the discovery requests." As noted above, the initial deadline was October 3, 2005. Plaintiff's requests were not served until September 26, 2005, seventeen days **after** the deposition of Plaintiff and one hundred fifteen days (115) after the date for close of discovery was initially set by this Court.

17. Plaintiff scheduled depositions of various representatives of the Defendants as well as for the Defendants themselves without consultation with counsel. These were scheduled on September 20, 2005 and set for September 27, 2005. (See Exhibits A through E).

18.     There was no correspondence or conversation from Mr. McNair concerning the discovery responses prior to the scheduling of these depositions, nor could there be since they were not served until six (6) days **after** the depositions were scheduled.

19.     The responses that Plaintiff submitted to Defendant Onorato's discovery requests are also the subject of a Motion to Compel that is pending before this Court.

20.     Sometime prior to October 10, 2005, the deposition of John Onorato was rescheduled without notice to undersigned counsel and to a date not agreed upon between Mr. McNair and Mr. Lane. (See Exhibit F).

21.     E-mail correspondence was initiated by Plaintiff's counsel and has been attached to the Motion to Compel.  The undersigned directs the Court's attention to Document 32 specifically to the e-mail that erroneously went to Mr. McNair, having been intended for counsel's paralegal, indicating that on November 21, "Today they need to go out!".  To which Mr. McNair responded.

22.     Plaintiff's counsel has acknowledged receipt of the Answers and Objections on November 23.

23.     On December 5, counsel again initiated e-mail correspondence concerning the responses and undersigned counsel sent a clear message to Mr. McNair concerning the Defendant's position on its responses.  It should have been clear to Mr. McNair on behalf of Plaintiff why various documents would not be produced and referred him to the confidentiality provisions of OCY and statutes that had been referred to numerous times in the two depositions. (See document 32 attached to Plaintiff's motion).

24. The response to that e-mail is attached as well to Plaintiff's motion. It contains a string of e-mails culminating in the e-mail from Defendants' counsel of December 5. This response was based on the e-mail sent by McNair on that date at 12:02 PM.

25. On December 8, 2005, undersigned counsel sent a letter to both McNair and Angelone in which he advised both counsel that he was reviewing the November 28 correspondence in order to "give it the attention that it deserves . . ." That correspondence also asked that the two lawyers for Plaintiff review all documents that were produced to Mr. Angelone during the prior administrative litigation. (See Exhibit G).

26. Two responses were received. On December 9, Mr. Angelone sent a response. His letter of position and response is attached as Exhibit H.

27. Mr. McNair also responded. His response is attached as Exhibit I.

28. After review of the reply from Attorneys Angelone and McNair, Defendants have sent various documents to Plaintiff which were attached as exhibits to Ms. Conley's deposition as well as others deemed not to contain confidential information or information that is not possibly relevant to the allegations made in Plaintiff's Complaint. (See Exhibit J).

**REPLY TO SPECIFICS OF MOTION TO COMPEL**

**MOTION TO COMPEL RESPONSES TO PLAINTIFF'
REQUEST FOR PRODUCTION OF DOCUMENTS**

29. Plaintiff contends that in Request for Production No. 3, Defendants were requested to produce an e-mail and warning referred to by its counsel at the June 3, 2005 status conference in this case. Defendants' reply was that the e-mail was produced at the deposition of the Plaintiff and had been previously provided to Plaintiff's counsel during litigation before the state Labor Relations Board. As stated in paragraph 28 above, Defendants have produced all of

the deposition exhibits and in addition other documents that have been reviewed. The e-mail referred to by counsel in the June 3, 2005 status conference has been produced as well. In addition, Defendants' counsel does not have a copy of the transcript of the June 3, 2005 status conference and therefore is not in the position to respond to request other than to provide the e-mails that have been produced to Plaintiff.

30. Request for Production No. 5 requested that the Defendants produce each document they contend refers or relates to any instance of disclosure of confidential information by the Plaintiff. During the course of Plaintiff's deposition, she identified e-mails that had been sent to her which implicate her in the release of information pertaining to a case that we being handled by her supervising social worker. In addition, during that deposition, there was reference to letters from that particular client in which Plaintiff's name was mentioned and knowledge of an impending detention order of the child was disclosed. Again, these e-mails have been produced by Defendants pursuant to the request. As Defendants stated in their correspondence to Plaintiff's counsel, those particular documents had been presented not only at the depositions but at the request of Mr. Angelone in the prior litigation. Plaintiff and counsel were well aware of the contents of those e-mails as well as their existence.

In addition, Plaintiff had been made aware of the concerns that she had received and disclosed confidential information concerning a child abuse allegation made by Plaintiff against one of her co-workers. Again, e-mails produced during the course of Ms. Conley's deposition as well the deposition Deanna Cosby, the person to whom she disclosed this information, confirmed that Ms. Conley had disclosed confidential information protected by statutes as well as regulations  The statutes and regulations at issue were described during the course of Ms. Conley's deposition. They have again been provided to Plaintiff in the supplemental response.

31. Request for Production No. 6 requested that the Defendants produce the report of the findings of the investigation conducted concerning Patricia Wozniak. All documents concerning Patricia Wozniak's investigation are confidential. In addition, Defendants can see no relevance in the production of those documents other than to embarrass and intimidate Ms. Wozniak. Although Plaintiff alleges that she was terminated because of her complaint concerning this individual, she had produced no evidence to justify that assertion at this time. In addition, the documents requested not only violate the confidentiality and privacy rights of Ms. Wozniak but also of the family of the child to whom that allegation concerned. Plaintiff had not made an offer of proof to Defendants although requested to do so as to what relevance said file would have.

32. Request for Production No. 8 requested Defendans to produce a complete and unredacted copy of Plaintiff's personnel file. Defendants' response was that those documents had been previously produced to Plaintiff's counsel. Plaintiff's counsel, Mr. McNair, stated that was incorrect. He stated that he did not receive those. However, in paragraph 14 of the motion, he states that they may have been provided to co-counsel, Anthony Angelone, in conjunction with a civil service proceeding that was withdrawn but it has not been certified in this action that it is a complete copy of the file. It is Defendants' position that if Mr. Angelone received a copy of Ms. Conley's personnel file in a prior proceeding and since he has entered an appearance in this matter, then the request has been mooted by the fact that Mr. Angelone may have received said copy. However, if that is not case, or if Mr. Angelone no longer has such a file, Defendants will be willing to produce what they have.

33. Plaintiff's Request for Production No. 9 requests that Defendant, County of Erie, produce all notes, memoranda, e-mails and other documents which relate to communications to

and among Debra Liebel, Michael Cauley, Susan Deveney, Patricia Wozniak, John Onorato, Richard Schenker and/or Peter Callan, regarding the Plaintiff, any case in which the Plaintiff was involved or in the investigation of the Plaintiff between January 1, 2004 and September 10, 2004. The Defendants' objection is grounded on the fact that any information that may have been related between these individuals between January 1, 2004 and September 10, 2004 regarding any case which the Plaintiff was involved would contain identifying information of clients. While Plaintiff's counsel suggests that Plaintiff is not aware of a state or federal statute which makes internal communications concerning an employee the subject of any legal privilege, it is Defendants' position as stated previously that these e-mails would contain information identifying clients and such information would be deemed to be confidential. In addition, such e-mails may contain attorney-client privileged information since Mr. Onorato is the County Solicitor. Mr. Michael Cauley is counsel for the Office of Children and Youth. Both of these individuals at that time were giving legal advice if such e-mails exist, to their clients. Again, Plaintiff has made no offer of proof other than a bald assertion that she was terminated by giving "truthful testimony" in a courtroom concerning the changing of a document. It is Defendants' position that that was not a truthful and good faith complaint. Plaintiff knew prior to that hearing, that she was being investigated informally for the release of confidential information. She testified at her deposition that she knew that it was normal procedure that her reports were scrutinized and sometimes changed by her supervisors and that in instances in which she gave an opinion that she was not qualified to make, such opinions were stricken and observations alone were placed in the reports. Plaintiff asserts that a confidentiality order from this court would satisfy any confidential and privileged needs. Based upon her history, Plaintiff has shown no history of complying with confidentiality statutes and/or regulations. That is evident from the e-

mails that Plaintiff sent to a former worker no longer employed by the department in which she spoke of clients and other confidential information.

34.     Request for Production No. 10 requests the production of the personnel files for Richard Schenker, John Onorato, Peter Callan, Michael Cauley, Susan Deveney, Patricia Wozniak and Deanna Cosby. Defendants' objection was their request was not reasonably calculated to lead to the discovery of admissible evidence and is propounded to harass and intimidate these individuals. The reasons for Ms. Cosby's departure from OCY are stated by Ms. Cosby in her deposition. Whether Ms. Cosby was on the verge of being terminated or had individuals problems with OCY supervisors is irrelevant to Ms. Conley's assertions as to why she was terminated. Any relevance to this matter would be solely to impeach the credibility of Ms. Cosby should she be called testify in this matter by either party. Therefore, such information is not calculated to lead to admissible evidence by Plaintiff. Insofar as the personnel records of the other Defendants and individuals are concerned, again, Plaintiff has made no offer of proof that would show that the personnel files would in any way lead to the discovery of admissible evidence as to Plaintiff's assertion that her termination was for exercising her first amendment rights.

35.     Request of Production No. 11 requested Defendants to produce all versions of any e-mails from Plaintiff from Susan Deveney regarding any court summary prepared for the Shuster/Casella case. These e-mails have been provided both at the deposition of Ms. Conley as well as in the supplemental response by Defendants.

36.     Request for Production No. 13 requests the production of any appointment book maintained by Patricia Wozniak between January, 1, 2004 and September 10, 2004 or any similar document which reflects the activities of Patricia Wozniak between those dates. Again,

the confidentiality provisions of federal and state statute would apply in this case since it would be likely that the names of clients would appear in those entries. In addition, Patricia Wozniak was not involved in the separation of Plaintiff from her employment at the office of Children and Youth. Plaintiff's claims that Ms. Wozniak was absent from work and failed to comply with court orders are irrelevant in this case. Defendants' position is that Ms. Conley was asked to resign from her employment with OCY because she had disclosed confidential information to Deanna Cosby and to others not associated with OCY concerning activities of OCY and its clients.

      37.    Request for Production No. 14 requested Defendants to produce documents reflecting Plaintiff's earnings with Defendant from the date her employment commenced through the date it was terminated. Defendants' reply was that Plaintiff should have copies of tax returns and W-2s in her own possession. Plaintiff's response in her motion indicates not that she does not have that information but that production of this evidence by the Defendants will "eliminate any argument that the Plaintiff has 'cooked' the evidence in her favor or that any evidence that the Plaintiff were to produce would inaccurate." There is a further assertion that the denial of this extremely reasonable request is not in good faith, is calculated to prolong and complicate these proceedings and multiply the cost thereof and is intended to increase the burden of this litigation on the Plaintiff. Defendants respond by stating that if indeed Plaintiff does not have in her possession her tax returns and/or W-2 forms to indicate in her opinion what her wages were, these Defendants will endeavor to provide same to her before trial.

      38.    Request for Production No. 15 request Defendants to produce all court orders entered in the Vickie Wilson case. Again, Defendant reiterates that this is not reasonably calculated to lead to the discovery of admissible evidence nor is it admissible at the trial of this

action. There is nothing more appropriate for protection than Orders of Court regarding child custody and control proceedings. The handling of the Vickie Wilson case in no way implicates the termination of Ms. Conley from her employment. It does, however, by copies of the letters and e-mails that have already been produced, show without a doubt that Abby Conley was involved in the release of confidential information concerning OCY activities and concerning the family of Victoria Wilson. Said information was calculated by Ms. Conley to obstruct the legal process that OCY undertook. The fact is that she, through Deanna Cosby, advised Victoria Wilson of a pending detention order against her unborn child. By doing so, it is the Defendants' position that Ms. Conley released information that could have put that unborn child at risk.

39. Request for Production No. 16 requests Defendants to produce all court orders entered in the Shuster case. Defendants repeat and incorporate by reference its responses to motion concerning Request for Production of Documents No. 15.

40. Request for Production No. 17 requested Defendants to produce all documents that refer, relate to or comprise any communications between and among Erie County Office of Children and Youth and Cheryl Beer. Defendants' response is appropriate in that this information again contains confidential information concerning clients of the agency of OCY. In addition, Plaintiff's counsel is incorrect in his assertion that Cheryl Beer and her paramour, who is the father of a child subject to agency protection, were involved. Cheryl Beer is the mother of Robert Beer who was the father of Victoria Wilson's child, Mackenzie Beer. She was not, as implied in Plaintiff's motion, the mother of any child in OCY custody. Again, Plaintiff's counsel failed to furnish admissible evidence that would be produced in his November 28, 2005 letter to counsel, he merely stated the communication is highly relevant to Ms. Beer's credibility and your client's potential to influence her potential testimony.

41.     Request for Production No. 18 requested Defendants to produce all documents including e-mails that refer to, relate to or comprise any communications between Michael Cauley, Susan Deveney and Patricia Wozniak concerning the Shuster-Cosella case or the Vickie Wilson case from June 1, 2004 through September 10, 2004.  Again, Defendants' position is that this information is confidential in nature and is not relevant to any of the issues involved in this case.  Defendants reiterate to the court that the separation of Ms. Conley from her employment at OCY resulted from her documented release of information that was confidential in nature concerning clients of the agency as well as information concerning a co-worker who she falsely accused of child abuse.

Insofar as Plaintiff's assertion that a protective order would be appropriate in this case, Defendants again point out to the court that Plaintiff has not shown a willingness to comply with confidentiality statutes in the past.  Defendants also point out to the court that its objections concerning relevancy should be sustained and at the very least, Plaintiff should be made to make an offer of proof as to how these documents would lead to admissible evidence in this matter.

## **MOTION TO COMPEL ANSWERS TO PLAINTIFF'S INTERROGATORIES**

42.     Interrogatory No. 1 requests the Defendants to identify each e-mail to or from Plaintiff that was in the possession of Erie County as such or the Office of Children and Youth at the time of the meeting of September 4, 2004.  Its response was that this is unduly burdensome and would not lead to the discovery of admissible evidence.  In addition, the Defendants objected on the grounds that it contained confidential information.  One can only imagine the amount of e-mails generated between Plaintiff and/or supervisory personnel during the course of her employment and that the subject matter of most of these e-mails concerning matters involving children and families serviced by the agency.  To suggest that these e-mails would have any

relevance to the specific issues involved in this case borders on ludicrous. There are probably hundreds of thousands of such communications contained on hard drives and in servers that may have been maintained by OCY. It would take an army of computer technicians to be able to go through and identify each and every one of these e-mails due to the fact that there are numerous individuals to whom Plaintiff could have communicated with via e-mail within that agency.

43. Interrogatory No. 6 requests "Please identify each other document that was in the possession of and actually considered by Erie County and the Office of Children and Youth in connection with the meeting of September 10, 2004." The objection of the Defendants was that the Interrogatory was vague and indecipherable and therefore the Defendant was unable to respond to it. Plaintiff's counsel's argument is "the Interrogatory clearly requested the identification of all documents that were considered by the Defendant in its decision to terminate Ms. Conley's employment." A reading of the Interrogatory does not suggest that at all. What it asks for is the identity of each other document that was in the possession and actually considered by Erie County and the Office of Children and Youth in connection with the meeting of September 10, 2004. Plaintiff has not laid a foundation that such a meeting among the Defendants took place prior to Abby Conley being asked to come to meet with Mr. Callan, Mr. Onorato and Ms. Liebel. Therefore, without some clarification from Plaintiff in the Interrogatory, the Defendants were unable to respond to it.

44. Interrogatory No. 9 asks the Defendants to set forth the number of children whose parental rights were terminated, who were adopted with the participation of the Erie County Office of Children and Youth between January 1, 2000 and the date of the Answers to the Interrogatories. Again, Defendants believe that these numbers bear no relevance to the issues involved in Plaintiff's separation from employment and this lawsuit.

46.     Interrogatory No. 11 asks that the Defendants describe each instance in which you allege Plaintiff improperly disclosed confidential information, specifically describing the information, identifying the person or entity to whom the information was disclosed, the statute, rule, regulation, policy or other basis for your claim that the information was confidential, the date upon which each instance that you allege constitutes a breach of confidentiality occurred and the date upon which each instance was discovered.  Defendants, in their answer, asserted that upon information and belief, the Plaintiff disclosed such information to Deanna Cosby, Vickie Wilson, E. Patella and other unknown persons.  It further went on to state that the violations of policy and statute were identified during Plaintiff's deposition and the deposition of Deanna Cosby.  The dates of the e-mails are exhibits to both depositions.  The court must remember that the Interrogatories that were sent out by Plaintiff were sent out after Plaintiff had been deposed.  During the course of Plaintiff's deposition, she was provided all information via exhibit which she identified concerning her communications to parties that were not OCY employees.  Plaintiff denied giving information to Mr. Patella and to Ms. Wilson although she admitted to providing information to Deanna Cosby both by telephone and in e-mails.  At the time of the responses to these Interrogatories being drafted by Defendants, the deposition of Deanna Cosby had been taken.  Ms. Cosby identified e-mails and telephone conversations that she had with Abby Conley concerning matters relating to clients of OCY.  Defendants fail to understand how any further information other than that contained in the documents produced during these deposition and in the testimony of both deponents would lead to the discovery of any other evidence that might be admissible in this matter.

**CONCLUSION AND REQUEST FOR SANCTIONS**

Plaintiff has done nothing more in her motion than to cast aspersions on the good faith of the Defendants. This court must understand that during the course of the prior litigation, the Defendants provided hundreds of documents to Mr. Angelone who is co-counsel in this matter. If Mr. Angelone failed to communicate his understanding of the issues involved in Abby Conley's separation from OCY to Mr. McNair, it is not the fault of these Defendants. Plaintiff's discovery requests are nothing more than a fishing expedition. They are calculated to do no more than to intimidate witnesses such as Patricia Wozniak, Susan Deveney and other employees of OCY. In addition, when asked to do so by the Defendants' counsel, Plaintiff's counsel refused to provide specifics as to why the Defendant was incorrect in its assertion that many of these requests were covered by confidentiality and privacy statutes. Rather than cite rules of evidence, case law, statutes or regulations which would support his position that the was entitled to this information, he made blanket statements that the Defendants' objections were misplaced. In addition, Plaintiff has produced no reference in his motion to any statute, regulation or court decision which would assist the court in its determination.

WHEREFORE, Defendants request that this court sustain its objections and issue an order that Defendants' responses are adequate as written.

**LAW OFFICE OF JOSEPH S. WEIMER**

*/s/ Edmond R. Joyal, Jr.*
Edmond R. Joyal, Jr., Esquire
PA I.D. #65907
Attorney for Defendants
Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA  15219
(412) 338-3184

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Amend Answer has been served by First Class Mail, postage pre-paid, upon the following parties on this 28th day of December, 2005.

>Anthony Angelone, Esquire
>Vendetti & Vendetti
>3820 Liberty Street
>Erie, PA 16509
>*(Counsel for Plaintiff)*
>
>Timothy D. McNair, Esquire
>Law Office of Timothy D. McNair
>821 State Street
>Erie, PA 16501
>*(Counsel for Plaintiff)*
>
>Mark R. Lane, Esquire
>Dell, Moser, Lane & Loughney, LLC
>525 William Penn Place, Suite 3700
>Pittsburgh, PA 15219-1707
>*(Counsel for Defendant, John A. Onorato, Esquire)*

**LAW OFFICE OF JOSEPH S. WEIMER**

BY: */s/ Edmond R. Joyal, Jr.*
　　　Edmond R. Joyal, Jr., Esquire
　　　Pa. I.D. #65907
　　　Attorney for Defendants.
　　　Law Office of Joseph S. Weimer
　　　975 Two Chatham Center
　　　Pittsburgh, PA 15219
　　　(412) 338-3184