### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ABBY B. CONLEY,

        Plaintiff

        v.

COUNTY OF ERIE, ERIE COUNTY OFFICE
OF CHILDREN AND YOUTH, a/k/a ERIE
COUNTY CHILD WELFARE SERVICE,
RICHARD SCHENKER, individually and in his
capacity as County Executive of Erie County,
Pennsylvania, PETER CALLAN, individually
and in his capacity as Erie County Director of
Personnel, DEBRA LIEBEL, individually and in
her capacity as Executive Director, Erie County
Office of Children and Youth, a/k/a Erie Child
Welfare Service and JOHN A. ONORATO,
ESQUIRE, individually and in his capacity as
Erie County Solicitor,

        Defendants.

**JURY TRIAL DEMANDED**

CIVIL DIVISON

No.: 05-CV-76E

Honorable Judge Sean J. McLaughlin

Civil Action No.: 05-76E

## MOTION FOR SUMMARY JUDGMENT OF JOHN A. ONORATO, ESQUIRE

AND NOW, comes Defendant, John A. Onorato, Esquire, by and through his attorneys,

Dell Moser Lane & Loughney, LLC and Mark R. Lane, Esquire and files the within Motion for

Summary Judgment, stating as follows:

1.      Plaintiff, Abby B. Conley, filed this action in relation to her separation from

employment with the Erie County Office of Children and Youth.

2.      Plaintiff alleges that she was discharged from employment in violation of 42

U.S.C. §1983 and the Pennsylvania Whistleblower Law, 43 Pa.C.S. §1421, *et seq.* , as a result of

her "good faith" reporting of a co-worker, PW,[1] for "forcibly" grabbing a child's face with her left hand and shaking the child, and for Plaintiff's testifying at a hearing on July 28, 2004, that her Supervisor, Sue Deveney, had altered Plaintiff's Court Summary related to a certain case being handled by the Office and Children and Youth. *See, Plaintiff's Complaint at ¶ ¶ 15-24.*

3.      Plaintiff contends that as a result of her reporting of PW and testimony regarding the alteration of her Court Summary, she was forced to resign, and was constructively discharged, on September 10, 2004. Plaintiff contends that she "would not have been fired had she not reported the misconduct of her supervising Case Worker, [PW], or testified against her Supervisor, Deveney, under oath at the July 28, 2004 hearing." *See, Plaintiff's Complaint at ¶ 31.*

4.      Defendant, John A. Onorato, Esquire, (hereinafter, "Onorato") was the Erie County Solicitor on September 10, 2004. Plaintiff's allegations against Onorato with respect to her termination are as follows:

25.     On Friday, September 10, 2004, at approximately 3:45 p.m., Ms. Conley was interrupted at work and told to immediately report to the Personnel Office at the Erie County Court House, where she was confronted by Liebel, Callan and Onorato.

26.     During the September 10, 2004 meeting, Liebel, Callan and Onorato collectively accused Ms. Conley of breaching Agency confidentiality on June 8, 2004, when Ms. Conley provided an ex-caseworker with the published telephone number of the natural mother involved in Case A, at the natural mother's repeated requests, and with the natural mother's authority. A second alleged infraction was Ms. Conley's use of the County's computers for personal reasons during her breaks, allegedly contrary to County policy.

27.     During her more than three years with the Agency, Ms. Conley was never reprimanded or warned for violating either policy raised at the September 10, 2004 meeting, nor was the computer usage policy strictly enforced as

---

[1] Throughout the instant Motion, supporting Brief and Concise Statement of Material Facts, certain names will be abbreviated and initials used in their place, in order to protect confidentiality, with respect to certain individuals and issues.

to other employees. Liebel, Callan and Onorato did not explain why the Agency and the County had searched Ms. Conley's deleted emails to discover the fact that Ms. Conley had provided the published telephone number to the former caseworker. The County does not have an established policy of reviewing deleted emails of employees on a regular basis and did not search or review Ms. Conley's emails until after her truthful testimony at the July 28, 2004 hearing. The search of Ms. Conley's deleted emails was calculated only to provide a pretext for the dismissal of Ms. Conley in retaliation for her reports of the assault of the client by [W] and her revelation of the manipulation of court evidence by Discovery.

28.    At the September 10, 2004 meeting, the Defendants insisted on Ms. Conley's resignation. Liebel, Callan and Onorato threatened Ms. Conley with criminal charges, telling her that the district Attorney was subject to their control. Liebel, Callan and Onorato threatened Ms. Conley with contesting her application for unemployment compensation, threatened Ms. Conley with providing unfavorable references in the future and refused to provide Ms. Conley with time over the ensuing weekend to consider her options. Onorato refused to permit Ms. Conley to consult with legal counsel, even though the County and the Agency were represented by counsel.

*See, Plaintiff's Complaint at ¶¶ 25-28.*

5.    Based upon the above allegations, Plaintiff has initiated claims against Onorato under 42 U.S.C. § 1983, for violation of her First Amendment rights (First Claim and Second Claim), conspiracy to deprive Plaintiff of her Constitutional rights (Third Claim and Fourth Claim), violation of the Pennsylvania Whistleblower Law (Fifth Claim), wrongful discharge (Sixth Claim), and defamation (Eighth Claim).

6.    In Plaintiff's defamation claim against Onorato, the Plaintiff alleges that in an article published in the *Erie Times News* on January 17, 2005, Onorato was quoted as stating to the *Erie Times News* reporter that Ms. Conley had committed "an egregious breach of confidentiality" and that a large bill incurred by the County in relation to Plaintiff's Civil Service Commission appeal was justified "in defense of the children." Conley disingenuously suggests

that these statements were false and that Onorato knew them to be false at the time he made them. *See, Plaintiff's Complaint at ¶ 58-64.*

7.    Despite Plaintiff's claims to the contrary, Plaintiff's resignation was necessitated by her significant breach of confidentiality which created a risk of harm to an unborn child, improper disclosure of County work product, violations of the County computer usage policy and violations of employee work and conduct responsibilities. These infractions are set forth in detail in the August 20, 2004 memorandum from Michael Cauley, Esquire, Solicitor for the Office of Children and Youth, to John Onorato, Esquire. *See, August 20, 2004, memorandum from Michael Cauley to John Onorato, Appendix Exhibit 9.*

8.    Incidentally, Plaintiff's allegations against PW were investigated by the Department of Public Welfare and determined to be unfounded. Furthermore, Plaintiff acknowledged during her testimony on July 28, 2004, that it was common practice at OCY for her supervisors to modify her Court Summaries because Plaintiff lacked the qualifications to render opinions and was to only to report facts which she observed. *See, Dept. of Public Welfare Report dated July 2, 2004, Appendix Exhibit 2, and Transcript of Abby Conley Testimony dated July 28, 2004, pp. 78-81, Appendix Exhibit 6.*

I.    **PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED, AS PLAINTIFF CAN PRESENT ABSOLUTELY NO EVIDENCE THAT HER "DISCHARGE" WAS SUBSTANTIALLY MOTIVATED BY HER CLAIMS AGAINST W OR BECAUSE OF HER TESTIMONY ON JULY 28, 2004.**

9.    Courts apply a three-step test when confronted with a public employee's claim that she was retaliated against for engaging in activity protected by the First Amendment. First, the employee must establish the "protected" nature of her conduct by showing that her speech involved a matter of public concern and that her interest in the speech outweighed the public employer's countervailing interest in providing efficient and effective services to the public.

Second, the employee must demonstrate that the protected speech was a substantial motivating factor in the alleged retaliatory action. If the employee can meet the burden at steps one and two, the employer can nonetheless avoid liability by showing "that it would have taken the adverse action even if the employee had not engaged in protected conduct." *See, Vantassel v. Brooks*, 355 F. Supp 2d 788, 797 (W.D. Pa. 2005).

10.     Plaintiff in this case can present absolutely no evidence that her reporting of W or her testimony of July 28, 2004, were substantial motivating factors behind the County's request for her resignation.

11.     In fact, to the contrary, the memorandum from Michael Cauley, Esquire to John Onorato, Esquire dated August 20, 2004, specifically identified, prior to Plaintiff's resignation, the reasons necessitating Plaintiff's separation from employment. *See, Appendix Exhibit 9.*

12.     Among the reasons for Plaintiff's necessitated separation identified in Mr. Cauley's letter of August 20, 2004 were the following:

> The employee was serving as the county social services aide in a case involving the mother [VW]. Several of the mother's children were in care and the mother was pregnant. Unbeknownst to the mother, the agency had obtained a "prognostic detention order" allowing placement of her newborn at the time of birth. According to Attorney Allgeier, the mother had made statements to the effect that she might flee the jurisdiction with this child at birth or shortly thereafter if the agency was indicating it might place the child. On June 4, 2004, the employee sent an email to Deanna Cosby advising her of the existence of the "prognostic detention order," and stating, "[V] does not see this coming." Deanna Cosby replied, "she will." Prior emails from the employee to Deanna Cosby regarding [VW] indicated that the employee had provided Cosby with [W's] home phone number, as well as the name and phone number of Ms. [W's] Erie attorney.

> The disclosure of the existence of this "prognostic detention order" to Ms. Cosby is a clear violation of agency confidentiality policy. Copies of emails spanning the period May 27, 2004 to July 20, 2004, marked Exhibit A, document this breach of confidentiality, as well as a continuing "conspiracy" wherein the employee ongoingly shared confidential information with Deanna Cosby regarding the [W] case as well as the related matters pertaining to the investigation of caseworker [W].

*See, memorandum from Michael Cauley, Esquire to John Onorato, Esquire dated August 20, 2004, Appendix Exhibit 9.*

> On August 4, 2004, I interviewed Kim Peebles, a supervisor of the Clerical Department at the Office of Children and Youth. She related being approached by the employee on August 2nd, 2004 with complaints about supervisor Deveney and caseworker [W]. According to Peebles, the employee reiterated the untrue allegations against caseworker [W] and discussed the particulars of that case with Ms. Peebles. This particular breach of confidentiality was done clearly to impugn caseworker [W].

> Ms. Peebles also related that during this same conversation, the employee similarly impugned Sue Deveney. She stated that Ms. Deveney was going to be criminally charged with obstruction of justice, there would be a newspaper article to that effect on Friday, (August 6, 2004), that she was going to be fired and that she would face jail time. She accused supervisor Deveney of improprieties in editing/correcting court summaries or documents that she herself had prepared.

> This contact with Ms. Peebles is inappropriate in that Ms. Peebles has no need to be aware of case specific information as related by the employee, Ms. Peebles has no supervisory authority over caseworker [W] or supervisor Deveney, and Ms. Peebles does not occupy any position in the agency that would make it necessary for her to have this type [sic] information brought to her attention.

*See, memorandum from Michael Cauley, Esquire to John Onorato, Esquire dated August 20, 2004, Appendix Exhibit 9.*

13. With respect to the July 28, 2004 hearing, Mr. Cauley did not even reference the fact that Abby Conley testified regarding modifications to her Court Summary, but rather focused exclusively on the fact that she had apparently provided a copy of the draft Court Summary to Attorney Villella prior to the hearing, in order to undermine the efforts of OCY in the case. Mr. Cauley stated:

> She testified that the document had been prepared by her on her county computer and that it remained on her hard drive. Attorney Villella's possession of it remained unexplained as it was not part of the official documentation furnished to the court and counsel for the parties in advance of the hearing.

> Review of the employee's emails reflects that, as she had testified in court, she sent the document to her supervisor Sue Deveney on April 19, 2004. It is also clear that she emailed the document from her County computer to an off-site

computer (email address **abby@ilovejesus.net**) on May 4, 2004. A copy of the emails dated May 4, 2004 is attached as Exhibit C. The clear inference is that the employee did this in order to furnish this document to opposing counsel in advance of the July 28 hearing. This activity would constitute a violation of the county computer usage policy, Roman Numeral IV, pertaining to county access and ownership of all data.

*See, memorandum from Michael Cauley, Esquire to John Onorato, Esquire dated August 20, 2004, attached hereto as Exhibit 9.*

14.    Undeniably, Conley's release of confidential information to Deanna Cosby and encouragement of Cosby to notify VW of the prognostic detention orders did not constitute protected speech. Likewise, Conley's maligning of Sue Deveney to Kim Peebles and release of a draft Court Summary to opposing counsel also did not constitute protected speech.

15.    All of the grounds set forth in Michael Cauley's letter to John Onorato were legitimate and constitutionally sound grounds to take whatever adverse employment action the County felt necessary against Abby Conley.

16.    Plaintiff can present absolutely no evidence to demonstrate that her reporting of W to her superiors and testimony regarding modifications to her Court Summary, as alleged in her Complaint, formed any part of the basis for the County requesting her resignation.

17.    In fact, before Plaintiff ever reported PW to her superiors, she had already been warned about disseminating confidential information. On Friday, June 11, 2004, Abby Conley emailed Deanna Cosby, stating that she had "some problems" because Sue Deveney called her into her office and said it had come to her attention that someone from the unit had sent out client information over the email system to a secondary email outside of the office. *See, email from Abby Conley to Deanna Cosby dated June 11, 2004, Appendix Exhibit 15.*

18.    In another email dated June 11, 2004, Abby Conley advised Deanna Cosby that she noticed Michele Shetter looking at her email. Conley acknowledged that Shetter "saw an

email about VW's attorney." *See, email from Abby Conley to Deanna Cosby dated June 11, 2004, Appendix Exhibit 16.*

19.    On July 8, 2004, Sue Deveney met with Abby Conley regarding confidentiality. The following day, Abby Conley acknowledged by email to Ms. Deveney that sanctions could be launched against her for breach of confidentiality. In a return email, Sue Deveney specifically indicated, "It is expected that confidentiality will be maintained regarding the recent incident in our unit…According [to] the directive I received from Administration, should this expectation not be followed, sanctions will be given out accordingly." *See, email exchange between Abby Conley and Sue Deveney dated July 9, 2004, Appendix Exhibit 20.*

20.    In a subsequent email dated July 12, 2004 from Abby Conley to Pam Biroscak, Conley acknowledged that she was told "to keep things confidential (that was the only thing that she said that was fair.)" *See, email from Abby Conley to Pam Biroscak dated July 12, 2004, Appendix Exhibit 21.*

21.    All of the email exchanges referenced above indicate that Abby Conley was warned about confidentiality and possible sanctions well before the July 28, 2004 hearing, during which Abby Conley testified about modification of her Court Summaries. Furthermore, Conley's exchanges regarding confidentiality began prior to Abby Conley reporting PW to an OCY supervisor.

22.    The evidence developed during discovery reflects that Plaintiff's separation from employment was necessitated not because of the reasons she proffers, but because of her egregious breach of confidentiality, disregard for agency policy, maligning of Sue Deveney and use of the County computer system to convey confidential case information in a callous, distasteful and dangerous manner.

23.     Accordingly, Plaintiff's claims for violation of her First Amendment rights (First Claim, Second Claim, Third Claim and Fourth Claim) must be dismissed.

## II.    PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED, AS HER ALLEGED SPEECH DID NOT INVOLVE MATTERS OF PUBLIC CONCERN.

24.     The Plaintiff cannot meet her burden to demonstrate that her reporting of PW to her superiors, and her testimony on July 28, 2004, were "protected speech," giving rise to a First Amendment claim.

25.     In determining whether Plaintiff engaged in "protected speech," the Court must first determine whether the speech in question involves a matter of public concern. *Vantassel*, 355 F. Supp. 2d at 797, citing *Curinga v. City of Clairton*, 357 F. 3d 305, 310 (3d Cir. 2004) and *Baldassare v. New Jersey*, 250 F. 3d 188, 195 (3d Cir. 2001). Speech is a matter of public concern "if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Id.* In determining whether speech is a matter of public concern, the Court must focus on the "content, form, and context of the activity in question." *Id.*

26.     "[S]elf interest and animus may indicate the speech involves a private dispute rather than an issue of public concern." *Cipriani v. Lycoming Housing Authority*, 177 F.Supp 2d 303, 323 (M.D. Pa. 2001), citing *Swineford v. Snyder County, PA*, 15 F.3d 1258, 1272 (3d Cir. 1994) and *Connick v. Myers*, 461 U.S. 138, 148 (1983).

27.     First Amendment protection does not extend to speech made in the course of acting as a public employee. *Thomson v. Scheid*, 977 F.2d 1017 (6th Cir. 1992).

28.     Even if the County had requested Plaintiff's resignation as a result of her reporting of PW and testimony on July 28, 2004, neither situation involved the Plaintiff engaging in protected speech.

29.    With respect to the incident involving PW, the Plaintiff testified during her deposition that PW grabbed a child's face, and that although Plaintiff felt that it was inappropriate, she did not feel that it was child abuse. *See, Deposition of Abby Conley at p. 265, Appendix Exhibit 4.* Furthermore, the Department of Public Welfare investigated the incident and determined that Conley's charges were unfounded. *See, Dept. of Public Welfare Report, Appendix Exhibit 2.*

30.    With respect to her testimony on July 28, 2004, regarding the modification of her draft Court Summary, the Plaintiff testified regarding the modification of her Court Summaries, acknowledging that modification of the Court Summaries was standard practice, and that she was not qualified to express opinions within those Court Summaries. The Plaintiff testified on July 28, 2004, as follows:

> Essentially, I think it was agreed upon that in my capacity I'm not really qualified, I'm not educated in social service. My education is through something else.
>
> .    .    .
>
> And it's not really my role to issue opinions or judgments against the families that I work with. My job is simply and humbly to facilitate visits and to make documentations of the observations I had, so really my opinion in any case really has no weight. That is just the nature of my position at Children's Services.

*See, Deposition of Abby Conley pp. 255-256, Appendix Exhibit 4. See also, Transcript of Hearing Testimony of Abby Conley dated July 28, 2004, Appendix Exhibit 6.*

31.    Plaintiff's reporting of PW to her superiors was not speech which constituted a matter of public concern. PW did not engage in conduct which was unlawful, corrupt, wasteful or abusive. The Plaintiff admitted that PW's conduct was not unlawful, but Plaintiff simply felt the conduct was inappropriate.

32.    Likewise, Plaintiff's testimony at the hearing of July 28, 2004, did not constitute speech on matters of public concern. The Plaintiff did not report criminal conduct, corruption or

waste, but rather simply reported standard protocol at OCY for revising Court Summaries, in light of the Plaintiff's admitted inexperience and lack of education in social services.

33.    Likewise, Plaintiff's reporting of PW and appearance at the July 28, 2004 hearing were part of her routine, required employment obligations as a case aide to OCY, thereby removing her conduct and speech from protection by the First Amendment. *See, Thomson, supra.*

34.    Accordingly, Plaintiff's claims for violation of her First Amendment rights (First Claim, Second Claim, Third Claim and Fourth Claim) must be dismissed.

**III.    PLAINTIFFS' CLAIM FOR VIOLATION OF THE PENNSYLVANIA WHISTLEBLOWER LAW MUST BE DISMISSED, AS PLAINTIFF CANNOT DEMONSTRATE THAT HER "DISCHARGE" WAS MOTIVATED BY HER CLAIMS AGAINST PW OR TESTIMONY ON JULY 28, 2004, AND THAT THE ACTIVITY SHE REPORTED CONSTITUTED "WRONGDOING."**

35.    The Pennsylvania Whistleblower Law provides as follows:

(a)    No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

(b)    No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

*See, 43 P.S. §1423.*

36.    Pursuant to 43 P.S. §1422 of the Whistleblower Law, a "good faith report" is defined as follows:

> A report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit in which the person making the report has reasonable cause to believe is true.

37.    Pursuant to 43 P.S. §1422, "wrongdoing" is defined as follows:

> A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

38.    As set forth above, Plaintiff can produce absolutely no evidence that her reporting of PW or her testimony regarding the modification of her Court Summaries formed the basis of her requested resignation.

39.    Furthermore, the conduct of PW, as reported by the Plaintiff, did not constitute "wrongdoing" under the Pennsylvania Whistleblower Law. As indicated above, the Department of Public Welfare determined that Conley's charges were unfounded, and Conley agreed in her deposition that PW did not commit physical abuse or any other unlawful act.

40.    Likewise, Plaintiff possesses absolutely no evidence that modification of her draft Court Summaries was in any way improper, unlawful or inappropriate. In fact, Plaintiff agreed that modification of her summaries was necessary in light of her lack of experience and education in social services, and that it was not her role to issue opinions or judgments against the families.

41.    Accordingly, Plaintiff's claim under the Pennsylvania Whistleblower Law (Fifth Claim) must be dismissed.

IV.    **PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE AGAINST ONORATO MUST BE DISMISSED, AS ONORATO WAS NOT HER EMPLOYER, DID NOT DISCHARGE HER, AND PLAINTIFF WAS A MEMBER OF A UNION PROTECTED BY A COLLECTIVE BARGAINING AGREEMENT.**

42.    Plaintiff was an employee of the County of Erie, not Onorato.

43.    To the extent any legitimate claim of wrongful discharge exists, which it does not, Plaintiff would have a potential claim against her employer, not John Onorato as the Solicitor.

44.    Furthermore, Plaintiff can produce no evidence to establish that she was discharged for reasons which violate public policy, as required by Pennsylvania law. *See, Geary v. United States Steel Corp.,* 319 A.2d 174 (1974).

45.    Additionally, as a member of a union, protected by a collective bargaining agreement, Plaintiff was not an at-will employee for whom the tort claim of wrongful discharge is available. *See, Phillips v. Babcock & Wilcox,* 503 A.2d 36 (Pa. Super. 1986), *alloc. denied* 521 A.2d 933.

46.    Accordingly, Plaintiff's claim for wrongful discharge against John A. Onorato, Esquire (Sixth Claim) must be dismissed.

V.    **PLAINTIFF'S CLAIMS FOR DEFAMATION MUST BE DISMISSED.**

47.    Plaintiff's Eighth Claim alleges defamation by John Onorato individually.

48.    Plaintiff alleges that in an article published in the *Erie Times News* on January 17, 2005, John Onorato was quoted as commenting on the County's defense of Plaintiff's civil service appeal. According to the Plaintiff, Onorato stated to an *Erie Times News* reporter that Plaintiff had committed an "egregious breach of confidentiality" and that the large bill was justified "in defense of the children." *See, Complaint ¶ 63.*

49.    John Onorato's statements to the *Erie Times News* reporter were true.

50.     Furthermore, John Onorato, Esquire is a "high public official" who enjoys absolute immunity from liability for statements made during the course of his official duties or powers within the scope of his authority. *See, Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996); *Mosley v. Observer Pub. Co.*, 619 A.2d 343 (Pa.Super. 1993) (county district attorney considered "high public official" and afforded absolute immunity for statements made to newspaper regarding pending investigation.)

51.     Any statements made by John Onorato regarding Plaintiff's resignation and the costs to defend her appeal were made during the course of his official duties or powers within the scope of his authority as County Solicitor, thereby affording him an absolute privilege.

52.     Additionally, the Plaintiff was a "public figure" and, therefore, must prove "actual malice" on the part of Onorato in order to prove defamation against him. *Manning v. WPXI, Inc.*, 886 A.2d 1173 (Pa. Super. 2005). In order to establish actual malice, the Plaintiff must produce sufficient evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* The standard of actual malice is "a rigorous, if not impossible, burden to meet in most circumstances." *Manning*, 886 A.2d at 1143.

53.     The Plaintiff can present absolutely no evidence to establish that John Onorato acted with actual malice in commenting to the *Erie Times News* regarding Plaintiff's civil service appeal, particularly here, where Onorato's statements were true.

54.     Accordingly, Plaintiff's claim for defamation against Onorato (Eighth Claim) must be dismissed.

WHEREFORE, Defendant John A. Onorato, Esq. respectfully requests that this Honorable Court grant his Motion for Summary Judgment and dismiss all claims against him with prejudice.

Respectfully submitted,

DELL MOSER LANE & LOUGHNEY, LLC

By _____

Mark R. Lane, Esquire
Pa. I.D. No. 61923
Attorneys for Douglas Laboratories and
HVL, Incorporated, Defendants
525 William Penn Place; Suite 3700
Pittsburgh, PA  15219
412-471-1180

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **Motion for Summary Judgment of John A. Onorato** have been served upon all counsel of record via Electronic Mail, this _____7th_____ day of April, 2006 as follows:

Anthony Angelone, Esquire
Vendetti & Vendetti
3820 Liberty Street
Erie, PA 16509
*Counsel for Plaintiff*

Timothy D. McNair, Esquire
Law office of Timothy D. McNair
821 State Street
Erie, PA 16501
*Counsel for Plaintiff*

Edmond Joyal, Esquire
The Law Office of Joseph S. Weimer
975 Two Chatham Center
Pittsburgh, PA 15219
*Counsel for Richard Schenker, Peter Callan and Debra Liebel
Individual Capacity Only*

Richard A. Lanzillo, Esquire
Knox, McLaughlin, Gornall & Sennett, P.C.
120 West 10th Street
Erie, PA 16501
*Counsel for County of Erie and
Richard Schenker, Peter Callan and Debra Liebel
Official Capacity Only*

Mark R. Lane, Esquire
Attorney for Defendant,
John A. Onorato, Esquire