**Appendix Exhibit 9**



DEPOSITION EXHIBIT

*Cauley #1*

August 20, 2004

John Onorato, Esq
County Solicitor
Erie County House
Erie, PA 16501

RE: Abby Conley

Dear Mr. Onorato:

I am forwarding for your review the within memorandum and attachments pertaining to my review of various documents, etc in connection with Abby Conley.

This memorandum is by no means exhaustive of all the information that I have reviewed but represents a summary of the major violations of the confidentiality policy, computer use policy, and Employee Work and Conduct Responsibilities as specifically outlined in the Erie County Government Employee Handbook.

For your reference in reviewing this memo, I am attaching for you copies of the Employee Work and Conduct Responsibilities reproduced from the Employee Handbook, Erie County Office of Children and Youth's policies on confidentiality which would have been disseminated to this employee during her orientation/initial training, policy number three of the County of Erie Personnel Policy and Procedures dealing with county computer usage, and an acknowledgment executed by the employee on February 11, 2003 pertaining to same.

After authorization was granted by the appropriate county authorities, arrangements were made with BAC to have the employee's children and youth computer files accessed. In that regard, BAC reproduced the entire employee's received and deleted emails for the period 1/1/04-8/12/04. They also reproduced all the employee's sent and deleted emails for the same period. In addition, all of the Word documents on the employee's hard drive were copied. I have

**EXHIBIT**

App. Ex. 9

reviewed all of this material which encompasses over 2000 emails and a significantly smaller number of Word documents.

Portions of those materials have been copied and are being furnished to you with this memorandum in support of the specifications I outline hereafter.

A general review of the computer documents reveals a pattern of improper use of the computer and internet.  It appears clear that the employee utilized the email system as an "instant messenger" substitute to maintain ongoing discussions, during work hours, with a former employee, Deanna Cosby; Ms. Cosby resigned from the agency and moved to North Caroline in approximately February, 2004.  In addition, the employee conducted some business related (not employment related) discussions using the email service and used data storage on her county computer for documents prepared in connections with her pursuit of an education at the TRIPP Bible Institute.

## ITEM #1- BREACH OF CONFIDENTIALITY

The employee was serving as the county social services aide in a case involving the mother V████ W█████  Several of the mother's children were in care and the mother was pregnant. Unbeknownst to the mother, the agency had obtained a "prognostic detention order" allowing placement of her newborn at the time of birth.   According to Attorney Allgeier, the mother had made statements to the effect that she might flee the jurisdiction with this child at birth or shortly thereafter if the agency was indicating it might place the child. On June 4, 2004, the employee sent an email to Deanna Cosby advising her of the existence of the "prognostic detention order" and stating "V███ does not see this coming." Deanna Cosby replied "she will". Prior emails from the employee to Deanna Cosby regarding V███ W█████ indicated that the employee had provided Cosby with W██'s home phone number, as well as the name and phone number of Ms. W███s Erie attorney.

The disclosure of the existence of this "prognostic detention order" to Ms. Cosby is a clear violation of agency confidentiality policy. Copies of emails spanning the period May 27, 2004 to July 20, 2004, marked Exhibit A, document this breach of confidentiality as well as a continuing "conspiracy" wherein the employee ongoingly shared confidential information with Deanna Cosby regarding the W████ase as well as the related matters pertaining to the investigation of caseworker W█████.

ITEM #2- BREACH OF CONFIDENTIALITY

Reference is made to a series of emails, attached hereto as exhibit B, between May 24, 2004 and May 25, 2004 between the employee and Deanna Cosby. The employee discloses information regarding the drowning death of a child under OCY supervision, whose caseworker is Mike Hughes. It discloses an instruction given by the employee's supervisor to her that "no one is to find out about this kid drowning", and the employee then explicitly encouraging Deanna Cosby to contact Ed Palatella at the Erie Times. In fact, the employee instructs Ms. Cosby "ok, go ahead tell Ed everything" and Cosby replying that she had placed a call to him into his voice mail.

ITEM #3- IMPROPER DISCLOSURE OF COUNTY WORK PRODUCT/
VIOLATION OF COMPUTER USAGE POLICY

On July 28, 2004, the employee was subpoenaed by Attorney Villella to give testimony on behalf J████ S██████ at a permanency hearing before Judge Kelly. During her examination, she was furnished by Attorney Villella, a copy of a document dated April 19, 2004 entitled County Social Services Aide Court Summary which she acknowledged was essentially a rough draft, and a document that had been edited by her supervisor before being placed in final form and submitted in advance of the hearing to the court. She testified that the document had been prepared by her on her county computer and that it remained on her hard drive. Attorney Villella's possession of it remained unexplained as it was not part of the official documentation furnished to the court and counsel for the parties in advance of the hearing.

Review of the employee's emails reflects that, as she had testified in court, she sent the document to her supervisor Sue Deveney on April 19, 2004. It is also clear that she emailed the document from her county computer to an offsite computer (email address abby@ilovejesus.net) on May 4, 2004. A copy of the emails dated May 4, 2004 is attached as Exhibit C. The clear inference is that the employee did this in order to furnish this document to opposing counsel in advance of the July 28 hearing. This activity would constitute a violation of the county computer usage policy, Roman Numeral IV, pertaining to county access and ownership of all data.

## ITEM #4- VIOLATIONS OF COUNTY COMPUTER USAGE POLICY

Review of the emails of the employee demonstrates a pattern of prohibited activities as set forth in this policy, and for the most part, clearly occurred during work hours. The employee engaged in some relatively minor commercial activity as evidenced by Exhibit D, attach hereto. The employee effectively used her email to serve as an "instant messenger" substitute to maintain ongoing contact with Deanna Cosby for non/county related business. Reference can and should be made to the entire amount of email documentation that has been reviewed to demonstrate this significant misuse.

It is also apparent that the employee used the county computer to facilitate her attempt to secure higher education at the TRIPP Bible Institute. Several documents were retrieved from her Word file which demonstrates this misuse. They are attached as Exhibit E.

## ITEM #5- VIOLATIONS OF EMPLOYEE WORK AND CONDUCT RESPONSIBILITES

The employee has engaged in conduct violative of sections A9, B6, and 8, C7 and 11. As you are aware, the employee has made baseless and untrue allocations to the Department of Public Welfare against caseworker P████ W█████ As of this writing, the agency is awaiting written documentation of this matter from DPW investigator Shara Savchikis.

On August 4, 2004, I interviewed Kim Peebles, a supervisor of the Clerical Department at the Office of Children and Youth. She related being approached by the employee on August 2nd, 2004 with complaints about supervisor Deveney and caseworker W█████. According to Peebles, the employee reiterated the untrue allegations against caseworker W████ and discussed the particulars of that case with Ms. Peebles. This particular breach of confidentiality was done clearly to impugn caseworker W█████

Ms. Peebles also related that during this same conversation, the employee similarly impugned supervisor Sue Deveney. She stated that Ms. Deveney was going to be criminally charged with obstruction of justice, there would be a newspaper article to that effect on Friday, (August 6, 2004), that she was going to

be fired and that she would face jail time. She accused supervisor Deveney of improprieties in editing/correcting court summaries or documents that she herself had prepared.

This contact with Ms. Peebles is inappropriate in that Ms. Peebles has no need to be aware of case specific information as related by the employee, Ms. Peebles has no supervisory authority over caseworker W█████ or supervisor Deveney, and Ms. Peebles does not occupy any position in the agency that would make it necessary for her to have this type information brought to her attention.

I have retained my notes of my conversation with Ms. Peebles on August 4, 2004 for future reference if need be.


CONCLUSION:

I trust that this information will provide an adequate summary of the concerns that the agency has regarding this particular employee, and how those concerns have been documented. As I indicated before, there is a large volume of email materials which, in particular, support the ongoing inappropriate relationship between the employee and Deanna Cosby. I will retain those pending further instruction from you. If you need anything else, or have questions or concerns about information that I am sending to you, please feel free to contact me at anytime.


Very truly yours,

Michael Cauley, Esq.
Solicitor Office of Children and Youth


cc: Debi Liebel

An absent employee upsets the natural flow of any organization. Try to avoid unnecessary absences.

9. **Punctuality**

Habitual tardiness indicates a lack of interest in your job and consideration for those working with you. Be on time! Also, remember to remain at your work area until the scheduled quitting time.

10. **Attitude**

A job can be a source of happiness - it's up to you to make it so.

## Telephone Courtesy

Your courtesy in using the telephone can create a positive impression of County Government and make work more pleasant for you and for those with whom you deal. In using the telephone, please keep in mind these recommended techniques:

1. Answer promptly - speak slowly and clearly.
2. Identify yourself by name and department.
3. Give accurate and careful answers.
4. Make accurate written notes of messages; deliver messages promptly.
5. Transfer calls tactfully.
6. Be free with "please", "thank you", and "you are welcome".
7. Speak with a smile.
8. If a person or information is not quickly available, ask to call the person back rather than leave someone holding on the line.
9. Remember when you leave the office, leave word as to where you can be reached.

## Political Activity

All County employees are restricted in their political activity to the extent they may not:

1. Engage in political activity, including but not limited to the solicitation of funds during scheduled work hours.
2. Use or promise to use any official authority or influence to secure for any employee an increase in pay or other advantage in employment.
3. Attempt to force another public employee to contribute to any political cause.

Civil Service employees and employees directly under the direction of the Courts have more specific restrictions on political activities. If you work in one of these areas, contact your supervisor for more information regarding any restrictions that may apply to you.

Violation of this policy is recognized by Erie County as cause for dismissal.

# EMPLOYEE WORK AND CONDUCT RESPONSIBILITIES

The purpose of this section is to inform County employees about the "work and personal conduct responsibilities" that each employee is expected to fulfill and the disciplinary action that will result for failing to fulfill a responsibility.

**Six Principles which Govern Disciplinary Action:**

1. Work responsibilities and work performance standards must be reasonable.
2. Employees must be aware of the work responsibilities and work performance standards for which they will be accountable.
3. The application of work responsibilities and work performance standards must be fair and consistent.
4. Disciplinary actions must be based on facts.
5. Disciplinary actions must be progressive.
6. A private counseling meeting, between the employee and the supervisor, who initiated the Responsibility Notice must be a part of each step in the disciplinary process.

**Procedure Introductory Statement:**

When it is ascertained that an employee has failed to fulfill a responsibility, which is identified below, the cognizant supervisor will investigate the incident and verify applicable facts; the supervisor will enlist the assistance of the Director of Personnel if a suspension or discharge is a potential action. The supervisor, after verifying that failure to fulfill responsibility did occur will prepare a Responsibility Notice.

The supervisor will have a confidential discussion with the employee for the purpose of reviewing the significance of the failure, if any. It is important to note that if the employee is a member of a bargaining unit, the procedure employed must be in concert with the appropriate labor agreement, including having a union representative present in the confidential discussion, if the employee so chooses. If the employee is non-bargaining he/she can choose to have a fellow employee present during this discussion.

Any suspension must be reviewed with the Director of Personnel before it is imposed.

**Section "A" Procedure for Failure to Fulfill a Responsibility:**

An employee, who fails to fulfill a "Section A" responsibility, will merit the following disciplinary actions:

1. The first failure to fulfill any responsibility, within the past twelve (12) months, will merit a "written" verbal first responsibility notice.
2. The second failure to fulfill any responsibility, within the past twelve (12) months, will merit a written second responsibility notice.
3. The third failure to fulfill any responsibility, within the past twelve (12) months, will merit a written third responsibility notice and impose a one (1) day suspension without pay.
4. The fourth failure to fulfill any responsibility, within the past twelve (12) months, will merit a written fourth responsibility notice and impose three (3) days suspension without pay.
5. The fifth failure to fulfill any responsibility, within the past twelve (12) months, will merit a written fifth responsibility notice and impose discharge.

**Section "A" Responsibilities:**

1. Failure to maintain a quality or quantity work effort that is commensurate to a fair days work for a fair days pay.
2. Being tardy/late three (3) ...

3. Failure to call supervisor within one-half hour after start time of shift to report absence.

4. Two (2) unexcused absences within the past ninety (90) calendar day period or three (3) in a twelve (12) month period.

5. Excessive personal phone calls, which are not of an emergency nature.

6. Unauthorized time away from department work station or work area, including extending break periods.

7. Using profane or abusive language.

8. Quitting work early, before break period, lunch period or end of shift.

9. Being disruptive or discourteous with other employees.

10. Conducting personal or political business during work hours.

11. Not reporting a work related accident or injury within twenty-four (24) hours after its occurrence.

12. Littering County property or facilities.

13. Improper or inappropriate dress or grooming.

14. Reporting to work in a condition not conducive to effective work performance.

15. Misconduct-conduct which is inappropriate or unreasonable in light of the circumstances involved and is comparable to the failures delineated in this Section "A".

## Section "B" Procedure for Failure to Fulfill a Responsibility:

An employee, who fails to fulfill a Section "B" responsibility, will merit the following disciplinary actions:

1. The first failure to fulfill a responsibility will merit a written responsibility notice and a suspension without pay for the number of days specified.

2. The second failure to fulfill a responsibility, within the past twenty-four (24) months, will merit a written responsibility notice and a suspension without pay for the number of days specified.

3. The third failure to fulfill a responsibility, within the past twenty-four (24) months, will merit a written responsibility notice, a suspension without pay and be subject to termination, pending an evaluations of the facts relating to the failure.

## Section "B" Responsibilities:

1. Failure to comply with safety regulations - 1 day.

2. Being discourteous, impolite, rude or disrespectful to the public via face-to-face or phone contact - 1 day.

3. Defacing County or another employee's property - 2 days.

4. Misuse of sick days - 1 day for each day missed.

5. Being insubordinate or disrespectful in words or conduct with a supervisor - up to 4 days.

6. Relating false or derogatory information, which may injure the name or reputation of another employee - up to 5 days.

7. Accepting a gift or gratuity, which a reasonable person would perceive as an influence to compromise the recipient's integrity or his/her objective decision-making - up to 5 days.

 Misconduct-conduct, which is inappropriate or unreasonable in light of circumstances involved and is comparable to the failures referenced in this Section "B" - suspension as warranted.

## Section "C" Procedure for Failure to Fulfill a Responsibility:

An employee, who fails to fulfill a Section "C" responsibility will merit immediate suspension without pay, and be subject to termination, pending an evaluation of the facts relating to the failure.

## Section "C" Responsibilities:

1. Threatening, intimidating, assaulting, battering or interfering with the well-being of a supervisor or another employee.
2. Falsification of employment or benefit documents or any document relating to County business or interests.
3. Possession, use or distribution on County property of a illegal or controlled substance such as marijuana, cocaine, opiates, amphetamines and phencyclidine.
4. Misuse of a legal drug.
5. Possession of unauthorized weapons or explosives on County property.
6. Working elsewhere during any paid or unpaid leave of absence.
7. Conduct, during work or non-work hours, which would cause a reasonable person to have an unsavory opinion about County employees or County operations.
8. Sexual harassment of any nature or degree.
9. Immoral or indecent acts.
10. Refuse to take a valid drug or alcohol test.
11. Misconduct-conduct which is inappropriate in light of circumstances involved and is comparable to the failures referenced in this Section "C".

## Appeals Procedure

A non-bargaining employee wishing to appeal a disciplinary action or some aspect of his/her employment may do so in accordance with the procedures outlined in the Personnel code, Section 16 appeals Board.

A bargaining employee wishing to appeal a disciplinary action or some other aspect of his/her employment may do so in accordance with the applicable labor agreement.

# LEAVE BENEFITS

The following leave policies (except for holidays, personal leave, sick leave, and vacation) apply equally to all permanent-status County employees.

Full-time employees are entitled to the amount of leave listed under holidays, personal leave, sick leave and vacation.

Regular part-time employees who work an average of at least twenty (20) hours per week are eligible for the equivalent percentage of holidays, personal leave, sick leave and vacation as their full-time counterparts.

| DATE: | APPROVED BY: | MEMO NO. |
|---|---|---|
| 1-2-85 | | 1-85 |

**COUNTY OF ERIE**
Department of Human Services
**OFFICE OF CHILDREN & YOUTH**

| SUBJECT: | FROM: |
|---|---|
| POLICY ON CONFIDENTIALITY | John Petulla |

PURPOSE:         POLICY GUIDELINES

DISTRIBUTION:    ALL STAFF - CHERRY & POPLAR BLDGS

DISPOSITION:     Retain for reference

Enclosed is our agency's policy on confidentiality.  I expect all staff members to review this policy and to be aware that confidentiality is a serious requirement for all of us. Every staff member in a supervisory position is to verify that each supervisee has reviewed this policy.

Attachment

# *Memo*

**TO:**      All Administrators and Clinical Supervisors

**FROM:**    Cheryl Bates

**DATE:**    May 29, 1997

**RE:**      Confidentiality Policy

---

Attached please find a policy statement clarifying Agency expectation and practice regarding the release of information that would identify the reporter of suspected child abuse or neglect.

Please share this with your staff.

Thank You.

Confidentiality
Identitification of the Referral Source in Cases of Suspected Child Abuse

The Child Protective Services Law states the following:

"Except for reports pursuant to subsection (a) (9) and (10) (referring to Law Enforcement referrals/Confidential Informants),the release of data that would identify the person who made a report of suspected child abuse or the person who cooperated in a subsequent investigation is prohibited unless the secretary finds that the release will not be detrimental to the safety of that person."

It is the intent of the Office of Children and Youth to maintain the confidentiality of any reporter of suspected child abuse when investigated under the Child Protective Services Law. This includes neither releasing the name of, or any information that would serve to identify, the referral source, nor confirming such. There will be occasions in which the referral source does not ask that his/her identity be kept confidential, the referral source indicates that his/her identity need not be kept confidential, or the referral source has or intends to inform the family of his/her identity and the need for a report to be made. Since the CPSL does not explicitly provide exceptions to the confidentiality mandate, the Office of Children and Youth will presume the need for and maintain the confidentiality of the referral source's identity in all instances.

When reports of child abuse/neglect are received by the Agency that are not governed by the Child Protective Services Law (non-CPS), confidentiality of reporter identity will also be presumed and maintained. The name of the referral source, or any other information that would serve to identify the referral source, is not to be released, nor confirmed, under any circumstances, including those reporters who indicate that they do not wish to have their identity kept confidential.

At the time of any report of suspected abuse or neglect, the referral source is to be informed that his/her identity will be kept confidential by the Agency, except in those situations which result in a mandated referral to Law Enforcement.

## Confidentiality Policy for Non-Service Related Staff

As a supplement to the general policy on confidentiality issued by the Office of Children and Youth on January 2, 1985, and as may be subsequently amended, the following policy/procedures are to be strictly adhered to by those staff not employed in the direct provision of services.

All families experience stresses from time to time. Sometimes these stresses result in the frustration and tension that lead to poor judgment, substance abuse, martial conflicts, and abusive action. As a result, it is quite likely that all staff will have cause to know on a personal basis, whether intimately or casually, families who are referred for and/or are actively receiving service from the agency. These families have a legal and ethical right to privacy that must be carefully safeguarded.

If any information about a person you know crosses your desk, you must immediately take that information to your supervisor. She/he will remove you from having any responsibility regarding that case.

If you have any information about a case that you feel is relevant to the evaluation process or the provision of services, you should take that information to either your supervisor or the worker or his/her supervisor. Refrain from engaging in a discission about the case. Although you may have general concern about the family, remember that you do not have any legal right to any information about them in terms of their involvement with the agency. The family will decide what information they want to share with you.

Use the search capabilities in CYCIS for bona fide job related duties only. Go to your supervisor if you have information on a case but do not know who the caseworker is.

If you are uncertain about a situation, seek guidance from your supervisor.

September 1987/1991

## POLICY ON CONFIDENTIALITY

### I.    CONFIDENTIALITY POLICY

Confidentiality of client information is a most important requirement to be followed by all agency staff. Staff members must maintain confidentiality under agency policy, Department of Public Welfare Regulations, and the Child Protective Services Law (Act 124). Our clients have the right to expect that information about them will be kept in strict confidence.

Due to the importance of maintaining confidentiality and to protect staff from liability, staff members are to adhere to the following practices. Whenever specific questions arise, consult with your supervisor.

1.  Assure that all appropriate release forms are signed prior to releasing client information.

2.  Information from other agencies or professionals should be released only with approval of the agency or professional involved and the proper release forms.

3.  The Child Protective Services (Act 124) law and regulations have specific requirements which staff must review prior to release of information for those cases.

4.  All client information is to be secured at the end of each work day.

5.  Information discussed within the agency is to be handled in the most discreet manner possible and discussion of any case is to be for professional purposes only.

6.  A staff member who has knowledge that a friend or relative is involved with the agency is to have no contact with the case record. Unless the staff member is reporting information or officially involved, the case is not to be discussed with staff handling the case. If this causes a conflict, discuss this with your supervisor.

7.  Information on clients is confidential and is not to be discussed with friends or others outside the agency.

## II.  SHARING OF INFORMATION

Both the Juvenile Act (42 PA C.S.) and the Child Protective Service Law (11 P.S.) make provisions for the nonconsensual release of information to professionals directly involved in the treatment of cases.

It is the policy and intent of the Erie County Office of Children and Youth to fully share all relevant available information with those professionals involved with the Office to provide diagnostic, assessment, or treatment services to the subjects of the report. However this only pertains to information necessary for the proper conduct of their professional duties and does not include the name of anonymous referral sources.

Non-employee professionals providing assessment or treatment services or are involved in cases should be informed in writing that they **must** not disclose any information that has been made available to them in the course of their professional activity with the Office, except with permission from the agency, to other professional members of a team investigating, assessing, or treating the specific case or to the Court of relevant jurisdiction.

Revised September 1991

POLICY NUMBER: 3

## COMPUTER USE POLICY AGREEMENT

I, _ABBY B CONLEY_ , have read and completely understand the "Erie County Computer and Internet Use Policy" effective on July 1, 2001.

Signature: _Abby B Conley_

Printed Name: _ABBY B CONLEY_

Date: _2/11/03_

**Signature page will be placed in
Employee's Personnel File in the Personnel Department**

Page 6 of 6

# COUNTY OF ERIE

## PERSONNEL POLICIES & PROCEDURES

SUBJECT:     COUNTY COMPUTER USAGE POLICY

DISTRIBUTION:   ELECTED OFFICIALS, JUDGES, DEPARTMENT HEADS

FROM:        FRANK N. SCALISE, DIRECTOR OF PERSONNEL

EFFECTIVE DATE: JULY 1, 2001

POLICY NUMBER: 3

I.    **POLICY**

County computers are intended to be used only for County work. Any personal use of the computer during work hours should be limited to that which is necessary and incidental, similar to making personal phone calls. If an employee wants to make more extended personal use of the computer, approval from the department head must be obtained prior to extended personal use. Whenever there is a question about this policy and/or personal or appropriate use of a computer or Internet, the employee should refer the question to the department head.

This policy applies to all computers owned by and under the control of the County of Erie and that are used for one or more of the following:

- As a terminal for a network or central computer system (e.g., FMS)
- As a PC running independent software (e.g., Word Processing)
- As a communications terminal (email, instant messaging, teleconferencing)
- As an internet terminal

II.   **PROHIBITED ACTIVITIES**

The following activities never constitute acceptable use and are always forbidden with County resources, including computers, whether during work hours or on the employee's own time:

- Pornography
- Participation in chat rooms
- Commercial activity (selling things or otherwise running a business)

Page 1 of 6

4

POLICY NUMBER: 3

- Political activity
- Religious activity
- Chain letters (sending or receiving)
- Instant messaging for non-County related business
- Solicitation of funds (except for official County business)
- Private email accounts, both web-based (e.g., Hotmail) and POP3 (e.g., AOL)
- Password encoding files
- Use of unauthorized hardware, software, or modifications

## III.   ACCEPTED ACTIVITIES

- Sending or receiving email that assists you in work related duties
- Visiting websites with content applicable to work related duties
- Locating telephone numbers and address of witnesses, business and government partners, or other individuals associated with work related duties
- Making travel arrangements for work related duties
- Printing maps to conference locations
- Researching grants for County programs
- Other activities as assigned or approved by supervisor or department head

## IV.   COUNTY ACCESS AND OWNERSHIP OF ALL DATA

- The County retains ownership of all data, passwords, applications and software developed with the use of County resources.
- The County reserves and intends to exercise the right to monitor employees' use of County computers and to access any information stored on County computers, including email communications and Internet use.
- Computers on the County network are for use by County employees only.
- Non-County personnel such as interns, work-studies, or personnel working under the direction of a County employee will only have access to a County computer under the supervision of County personnel with authorization to use County computer equipment.
- Any activity conducted under a County employee user password will be attributed to the County user.

Page 2 of 6

5

POLICY NUMBER: 3

- County records stored on a County computer are considered confidential information and may only be distributed under the authority of the department head or by existing department policy.

## V.   HARDWARE AND SOFTWARE INSTALLATION AND SERVICE

- Only software approved by the system administrator and department head may be installed on County computers.

- All hardware must be approved by the system administrator or department head and installed by the system administrator

- No shareware, personal software, or unlicensed copyrighted software is to be used on County computers.

- Any modifications to the computer, software, setup, or configuration must be approved by your system administrator or department head.  Use of any outside support (e.g., a vendor, your knowledgeable brother-in-law, etc.) must receive prior approval by the systems administrator.

- New hardware and software added to County computers will be done only by approved system administrators or approved vendors after consultation with one of the approved system administrators to insure software compatibility with County WAN software and hardware.

- In the event a department head wishes to utilize the services of an outside vendor for computer software support, the vendor must consult with one of the County approved system administrators before any changes are made to any computer operating on the Countywide network

## VI.   SECURITY

### A.   Passwords

- All passwords and changes in passwords must be recorded with the system administrator.

- Employees are responsible for safeguarding passwords, which should not be written down (except by systems administrator) or shared with others.   If there is any reason to think a password might have been compromised, it should be changed immediately.

- Employees are prohibited from:  adding any password security beyond that authorized by the system administrator, storing password encrypted files on a County computer or storage medium, or placing password protection on files created for County business.

POLICY NUMBER: 3

- All security breaches, including compromised passwords, should be reported to the supervisor and the system administrator immediately.

- All County employees must be aware of and follow appropriate security provisions concerning logging on or off County computer systems and networks. County employees are responsible for maintaining the confidentiality of their password and for all data that is placed on or deleted from a County computer.

B.  **Non-County Personnel**

- Non-County personnel may not be given access to County computer workstations except as authorized by department heads. Unattended terminals must be locked or logged off.

C.  **Virus Protection**

- Virus software must be kept active.

- Floppy disks, CDROM's, Zip Disks or other transferable storage devices must be checked before utilizing the disk on a County computer by one of the approved network administrators or his/her designee to insure a virus will not be transmitted from or to the employee's home computer or the Erie County Wide Area Network. The employee's work disk must be checked each time the employee uses the disk on his/her home computer. Outside disks must be scanned for virus before use.

- Email attachments may be opened only if they meet <u>all</u> of the following conditions:

  1)  You fully understand the attachment's origin and purpose.

  2)  There is a cover message that assures you the sender has knowingly sent the attachment to you.

  3)  The attachment is work related.

  4)  Your virus protection is active or the message has been scanned for virus after arrival.

D.  **Hacking**

- It is forbidden to access any County files, software, or data to which you have not been authorized access.

- It is forbidden to use County computers to access the data or computer system of any other entity to which you do not have legitimate access.

**Page 4 of 6**

7

POLICY NUMBER: 3

## VII. USE OF INTERNET

- Downloading is limited to documents needed for work-related business.
- Downloading unauthorized programs is prohibited.
- No right of privacy exists for County employees using Internet or email services.
- If you receive an email message that harasses or threatens you, report it as soon as possible to your supervisor and the District Attorney's Office.

## VIII. UPON TERMINATION OF AN EMPLOYEE

- Upon termination of an employee, the system's administrator will be notified and revoke all access to County owned computers.

## IX. COMPUTER USE POLICY AGREEMENT

- All County employees shall sign a computer use policy statement indicating that they have read the policy and will adhere to all the responsibilities and requirements.
- Upon discovery of a violation of this policy the user's account will be disabled and the department heads will be advised of the violation. Department heads will decide on appropriate penalties for the violation which may include but are not limited to oral reprimand, written warning, unpaid suspension, dismissal and possible criminal charges.

POLICY NUMBER: 3

## COMPUTER USE POLICY AGREEMENT

I, _____, have read and completely understand the Erie County Computer and Internet Use Policy effective on July 1, 2001 on

_____.

(date)


_____

Signature


_____

Printed Name

**Matt Granger**

From:         Conley, Abby
Sent:         Thursday, May 27, 2004 4:24 PM
To:           Deanna Cosby (E-mail)
Subject:      Vicki~ Wilson

Vicki~ Wilson 899-1566

I have the next 4 days off, yippeee skippeee!

Abby B. Conley

**Matt Granger**

From:         Hampton, Brenda
Sent:         Thursday, May 27, 2004 3:56 PM
To:           Conley, Abby
Subject:      FW: Proud of You and Thanks!

-----Original Message-----
From:     Kolupski, Charlene
Sent:     Wednesday, May 26, 2004 2:04 PM
To:       Deitsch, Laura; Hampton, Brenda; Heberle, Karen; Hinspeter, Marilyn; Holton, Kristie; Hopper, Joseph; Jeffers, Tracy; Kloss,
          Marilyn; Moffett, Erica; Nelson, Rick; Pettis, Bob; Siverd, Tom; Tobin, Reta; Vallone, Cindra
Subject:  Proud of You and Thanks!

Many of you may be aware that the Agency has been making the Headlines of the paper for the last week, and is often the case; it has not been the most positive publicity that we could receive. A very unfortunate situation occurred which resulted in the death of a child. I am not sending this to talk about the specifics of that case, but as many of you may be aware the case is under investigation by various investigative bodies and this is standard procedure and is required by criminal statutes as well as Department of Public Welfare Regulations. We have no control over what is printed in the press, but I know for myself, and I would think for you, it is difficult to read such public criticism on a daily basis and then go out and do the work that we do. As public child welfare professionals we are held to a high standard, as we rightly should be in the very important work that we do, but often to not receive the recognition and support for the very difficult job that we do.

In 1994, in Chicago, Illinois, that community became outraged by what they perceived as the child welfare agency's inappropriate response to a horrendous situation involving 19 children who were severely maltreated. That agency, as well as the staff, was subjected to brutal attacks in the press. A syndicated columnist, Bob Greene, wrote about the situation in his column. He spoke of the fact that when such incidents occur newspapers are mandated to report on those situations

3

EXHIBIT A

(factually, objectively, and lacking in sensationalism.....my "editorial comment"!). In part what he wrote:

"But however tough your job may be, however much pressure you may feel at work, be assured that the stakes that the average child welfare worker faces on an average morning are likely to be much tougher. When there are just too many addresses for a conscientious child welfare worker to visit on a given day, think of what that worker must be worrying about when he or she goes home for the night. Think of what that worker might be afraid of. You seldom here about the child welfare workers who are doing their jobs with commitment, passion and love. They are out there, every day."

I know that to be very true, because, on a daily basis, I work with the most dedicated, committed and competent group of child welfare professionals, in the state, and most likely the country. I am very proud of you and the work you do every day, you should be as well.

Thank you for all that you do for the families and children of Erie County.

Please let me what I can do to help you as we continue to deal with the many challenges that face us in the next several weeks and months that will assist you in the vital work that we do.

Char

## Matt Granger

| | |
|---|---|
| From: | Deanna Cosby [COSBYDE@co.mecklenburg.nc.us] |
| Sent: | Thursday, May 27, 2004 10:54 AM |
| To: | Conley, Abby |
| Subject: | Re: V█████ W█████ |

Michelle called me this morning so sweet and polite and how are yous. I did hear even a hint of the trash that she and Sue probably have said about me. She wanted to know if I would be available for a "teleconference for the A█████ case.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/27/2004 8:58:48 AM
>>>
Deanna,

V█████ attorney wants you to call her the number is 814-868-8541. The attorney's name is Amy Jones. W█████ asked me to ask if you would do this.

Abby B. Conley

## Matt Granger

| | |
|---|---|
| From: | Deanna Cosby [COSBYDE@co.mecklenburg.nc.us] |
| Sent: | Thursday, May 27, 2004 10:49 AM |
| To: | Conley, Abby |
| Subject: | Re: V█████ W█████ |

why

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/27/2004 8:58:48 AM
>>>
Deanna,

V█████ attorney wants you to call her the number is 814-868-8541. The attorney's name is Amy Jones. W█████ asked me to ask if you would do this.

Abby B. Conley

4

From:         Conley, Abby
Sent:         Thursday, May 27, 2004 8:59 AM
To:           Deanna Cosby (E-mail)
Subject:      Vi▇▇▇ W▇▇▇▇

**Deanna,**

**V▇▇▇▇s attorney wants you to call her the number is 814-868-8541. The attorney's name is Amy Jones. W▇▇▇▇ asked me to ask if you would do this.**

*Abby R. Conley*

From:
Sent:        Conley, Abby
To:          Monday, June 07, 2004 10:04 AM
Subject:     'Deanna Cosby'
             RE: did you call my cell last night

You said (she will)VW

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, June 07, 2004 9:57 AM
To: Conley, Abby
Subject: RE: did you call my cell last night

thanks, but for what

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/07/2004 8:55:21 AM
>>>
God Bless you Deanna!

We are in the paper again today, and in the letter to the Editor.
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 3:17 PM
To: Conley, Abby
Subject: RE: did you call my cell last night

she will

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/04/2004 2:29:53 PM
>>>
I just spoke to v███ █ last night, she was not in labor. Her attorney
told V████ that she has nothing to worry about when it comes
to the unborn child. She told V█████ that we (OCY) cannot detain.
V█ is taking her attorney advice, she is due any day. P████
has detention letters at all the local hospitals. █████ does not see
this coming.

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 1:59 PM
To: Conley, Abby
Subject: RE: did you call my cell last night

there is a new kinship placement policy that was issued in 12/03 that
i
remember and might still have a copy of to foward it to the att.  it
states that the cw can do an "eyeball" check rather than the homestudy
rather than place the baby into foster care but i remember when i
tried
to do that and had the documentation to back it up sue wouldn't let me
so i'm going to tell vw's att about it.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/04/2004 1:56:58 PM
>>>
Your in a better position then I!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]

1

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 1:23 PM
To: Conley, Abby
Subject: RE: did you call my cell last night


I know Zin tell her I said hi.  She goes to my old church greater
calvery and she was also recently married.  If she doesn't remember me
tell her Rosy's niece Deanna said hi.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/04/2004 1:17:11 PM
>>>
I have learned not to trust! Zin, the new girl is awesome. She is
Christian, normal, and believes in empowerment! God sent her to
this unit. I can tell she going to be one of us!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 1:09 PM
To: Conley, Abby
Subject: RE: did you call my cell last night


w/ justification

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/04/2004 1:09:42 PM
>>>
Paranoid!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 12:09 PM
To: Conley, Abby
Subject: RE: did you call my cell last night


can someone say.....paranoid

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/04/2004 11:28:57 AM
>>>
Yes I did, I REALLY wanted to tell you something! I'll talk to you
this
weekend! I don't trust this email system (monitored).


-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 04, 2004 11:12 AM
To: Conley, Abby
Subject: did you call my cell last night


did you call my cell last night

| | |
|---|---|
| From: | Deanna Cosby [COSBYDE@co.mecklenburg.nc.us] |
| Sent: | Friday, June 11, 2004 10:12 AM |
| To: | Conley, Abby |
| Subject: | RE: Hey I haven't spoken to you in a while. Just wanted to     say     hi. |

Okay, like I said we'll just stick to hey how ya doin. Any way things
are going good here. I'll be home soon

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/11/2004 10:11:01 AM
>>>
South, you can call the switchboard, push 0 when the prompt. Ask Judy
to send your call back.

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 11, 2004 10:04 AM
To: Conley, Abby
Subject: RE: Hey I haven't spoken to you in a while. Just wanted to
say
hi.


I just tried to and the recording said that the # you reached is not
in
service what room are you in N or S?

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/11/2004 10:07:48 AM
>>>
CALL ME!!!!
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 11, 2004 10:00 AM
To: Conley, Abby
Subject: RE: Hey I haven't spoken to you in a while. Just wanted to
say
hi.


Well we'll just keep the subject matter to hey how ya doin because I
know the situation there is not always positive.
I just read you're last email and I will not do ANYTHING to help
anyone
on Sue's unit except for you so now the phone conference is definitely
out. She is a nosey, miserable, busy body, who could stand a hard
slap
in the face. Well both of them could. But I'm ok w/ the fact that
life
smacks them in the face daily. Tra La

>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/11/2004 9:58:41 AM
>>>
I have had some problems. Sue called me into her office and said it
came to her attention that someone from her unit had sent out
client information over the email system to a secondary email outside
of this office.
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Friday, June 11, 2004 9:25 AM
To: Conley, Abby
Subject: Hey I haven't spoken to you in a while. Just wanted to say

1

hi.

Hey I haven't spoken to you in a while.  Just wanted to say hi.

**From:**      Deanna Cosby [COSBYDE@co.mecklenburg.nc.us]
**Sent:**      Friday, June 11, 2004 10:15 AM
**To:**      Conley, Abby
**Subject:**      I have spoke to an attorney re: you inquiry re: the email   system a ecocy

From:       Conley, Abby
Sent:       Monday, June 28, 2004 8:30 AM
To:         'COSBYDE@co.mecklenburg.nc.us'
Subject:    questions

I decided to write down the things I kept forgetting to ask you.

1) What is the name of that client of yours that had mental health issues? The guy that got angry and caused a lock down because of P⬛. Do you know how I could get a hold of him?

2) Would you be willing to speak to Western Region, about PW and SD?

3) What was the name of the family you heard PW maligning, remember last year you said you over heard her giving it to a parent?

4) Do you know PW's ex-husbands name? I know that attorney did (Amy Jones)

Abby B. Conley

1

From:             Deanna Cosby [COSBYDE@co.mecklenburg.nc.us]
Sent:             Monday, June 28, 2004 9:56 AM
To:               Conley, Abby
Subject:         Re: questions

1. The family name is ▓▓▓▓ look in the record for the address and #
2. yes
3. i don't remember
4. i don't know and it might not be relevant


>>> "Conley, Abby" <aconley@eriecountydhs.org> 06/28/2004 8:30:16 AM
>>>
I decided to write down the things I kept forgetting to ask you.

1) What is the name of that client of yours that had mental health
issues? The guy that got angry and caused a lock down because of
P▓▓▓▓. Do you know how I could get a hold of him?

2) Would you be willing to speak to Western Region, about PW and SD?

3) What was the name of the family you heard PW maligning, remember
last year you said you over heard her giving it to a parent?

4) Do you know PW's ex-husbands name? I know that attorney did (Amy
Jones)

Abby B. Conley

1

so hurry up and go outside

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:23:38 PM
>>>
I have a visit in 14 minutes

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:15 PM
To: Conley, Abby
Subject: RE: hey


go outside so i can call you on you c-phone

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:19:58 PM
>>>
I forgot to tell you, I met with Char and Pam for two hours yesterday.
Oh what a mess! Wait till I tell you what they said.

ABC

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:04 PM
To: Conley, Abby
Subject: RE: hey


I have to try and find my camara w/ the Beach pictures so I can send
them.  I'm supposed to be going back to the beach this weekend.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:09:06 PM
>>>
Oh goodie! Clap, clap, clap , clap!

I'll try to get a picture of the boys and the SeaWolf mascot!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:00 PM
To: Conley, Abby
Subject: RE: hey


i'm sure they would

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:05:47 PM
>>>
Do you think the boys would like to go to a Seawolves game this
Saturday. The game does not start till 7:05 though.

Write back and tell me, I can teach them to howl at the game!
Awooooooooooooooooooooooooooooo

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 2:26 PM
To: Conley, Abby
Subject: hey


hey

3

To:
Subject:

Deveney, Sue
RE:

The last sentence of this message states that you have concerns about my emotional involvement. Could you explain exactly what emotional involvement means?

-----Original Message-----
From: Deveney, Sue
Sent: Friday, July 09, 2004 12:53 PM
To: Conley, Abby
Subject: FW:

Abby -- This is to confirm what I said at our meeting yesterday regarding confidentiality. It is expected that confidentiality will be maintained regarding the recent incident in our unit. It is not to be discussed with professionals from other agencies, nor with the parents, foster parent, etc. According the directive I received from Administration, should this expectation not be followed, sanctions will be given out accordingly.

The purpose of our meeting was to discuss this issue. I approached you because I am your Supervisor and it was my responsibility to remind you about confidentiality. As you recall, we also discussed a case you service in Tami Petrucelli's unit, the C████ case in great length, and my concerns about your emotional involvement in cases at times.

Thank you. -Sue-

-----Original Message-----
From: abby@christian.net [mailto:abby@christian.net]
Sent: Friday, July 09, 2004 7:33 AM
To: Deveney, Sue
Subject:

Ms. Deveney;

I am notifying you from my home email, I do not have the needed time this morning to make this request in person.

I was wondering if you would please place the comments you made to me in your office yesterday 7/9/04, in regards to someone in the public having knowledge about the Case Worker you mentioned, and possible sanctions being launched against me in the future.

If you could also include what you said about Debi Liebel giving you that directive to approach me on this subject matter, I would appreciate it.

Having this document in writing will help me clarify and understand what necessitated our meeting, what my role was, and is on this subject in the future.

Thank you for your attention in this matter,

Abby B. Conley M.Th.
Social Service Aide

Cc;Records

1

To Subscribe, E-mail to: scripture-on@lists.tagnet.org

To Unsubscribe, E-mail to: scripture-off@lists.tagnet.org

      To communicate with the list publisher:
      Send email to: dailyscripture@sda.net

#########################################################
This message is sent to you because you are subscribed to
  the mailing list <scripture@lists.tagnet.org>.
To unsubscribe, E-mail to: <scripture-off@lists.tagnet.org> To switch to the DIGEST mode,
E-mail to <scripture-digest@lists.tagnet.org>
To switch to the INDEX mode, E-mail to <scripture-index@lists.tagnet.org>
Send administrative queries to  <scripture-request@lists.tagnet.org>

**Matt Granger**

| | |
|---|---|
| From: | Deanna Cosby [COSBYDE@co.mecklenburg.nc.us] |
| Sent: | Tuesday, July 20, 2004 3:25 PM |
| To: | Conley, Abby |
| Subject: | RE: hey |

i no

>>> "Conley, Abby" <aconley@erie                        3:30:11 PM
>>>
I meant watch my time! not what

*planned disclosure of discussions w/ supervisors 7-19-04 , mtg* [handwritten]

-----Original Message-----
From: Deanna Cosby [mailto:COSB
Sent: Tuesday, July 20, 2004 3:
To: Conley, Abby
Subject: RE: hey


ooooooooooooooooo!

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:28:04 PM
>>>
Sue said to what my
time..............................................

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:21 PM
To: Conley, Abby
Subject: RE: hey


ok did you get into trouble about that toooooooo?

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:25:54 PM
>>>
No, I'm not suppose to use the phone........................call me
tonight!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:18 PM
To: Conley, Abby
Subject: RE: hey

2

so hurry up and go outside

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:23:38 PM
>>>
I have a visit in 14 minutes

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:15 PM
To: Conley, Abby
Subject: RE: hey


go outside so i can call you on you c-phone

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:19:58 PM
>>>
I forgot to tell you, I met with Char and Pam for two hours yesterday.
Oh what a mess! Wait till I tell you what they said.

ABC

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:04 PM
To: Conley, Abby
Subject: RE: hey


I have to try and find my camara w/ the Beach pictures so I can send
them.  I'm supposed to be going back to the beach this weekend.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:09:06 PM
>>>
Oh goodie! Clap, clap, clap , clap!

I'll try to get a picture of the boys and the SeaWolf mascot!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 3:00 PM
To: Conley, Abby
Subject: RE: hey


i'm sure they would

>>> "Conley, Abby" <aconley@eriecountydhs.org> 07/20/2004 3:05:47 PM
>>>
Do you think the boys would like to go to a Seawolves game this
Saturday. The game does not start till 7:05 though.

Write back and tell me, I can teach them to howl at the game!
Awoooooooooooooooooooooooooooooo

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, July 20, 2004 2:26 PM
To: Conley, Abby
Subject: hey


hey

3

**Cauley, Mike**

| | |
|---|---|
| From: | Biroscak, Pam |
| Sent: | Monday, August 09, 2004 2:41 PM |
| To: | Allgeier, Cathy; Cauley, Mike |
| Subject: | FW: Gossip |

Cathy and Mike,
I just received this note. FYI. Pam

-----Original Message-----

| | |
|---|---|
| From: | Conley, Abby |
| Sent: | Monday, August 09, 2004 2:38 PM |
| To: | Biroscak, Pam |
| Subject: | Gossip |

## Mrs. Biroscak

I have been told by three different people that it has been determined that I invited the media to both of the Hearings I was subpoenaed to.

Usually I dismiss gossip, but since this has the potential of hurting me, I am willing to approach it directly.

I am more then willing to call Ed Palatella and have him write a letter, explaining who invited him, or maybe someone should call Ed and ask him out right if I did.

Let me know how I can help the truth to be told.

1

From:               Conley, Abby
Sent:               Tuesday, May 25, 2004 2:27 PM
To:                 'Deanna Cosby'
Subject:            RE: Were in the paper again today.

you are not telling the truth

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:21 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


to late while you're emailing me back and forth the call was put into
his vm

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:23:33 PM
>>>
okay, go ahead tell Ed everything! 870-1600 press zero for the
operator

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:16 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


yes I can we can dial directly out on our desk phones or c-phones

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:18:59 PM
>>>
You can't call long distance at work!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:12 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


ok its done

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:14:54 PM
>>>
I double dog dare you. Ed Paletalla is the reporter that has run all
the stories.

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:05 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


i'm dead serious no pun intended

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:08:58 PM
>>>
You made me laugh out loud

                                1

                        EXHIBIT B

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:02 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


to tell them about the child dying ✓

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:06:48 PM
>>>
why?

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 2:00 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


i calling the times newspaper                    ✓

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 2:03:01 PM
>>>
she gave me looks to kill, then told me, no ONE is to find out about
this kid drowning.
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 1:56 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


i know you are not suprised and Sue was probably to zooted to react

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 1:59:30 PM
>>>
M██did not shed a tear or acted like he cared when he found out
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 1:50 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


he probably hasn't seen that kid in a year

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 1:53:54 PM
>>>
One of M██ H█████ kids, the kid drowned this weekend at beaconlight  ✓
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 1:47 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


who what when where

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 1:48:55 PM
>>>
another one of our kids died .

-----Original Message-----

2

From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 1:40 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


i'm back now

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 1:41:44 PM
>>>
Okay, tra la!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Tuesday, May 25, 2004 12:37 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


he's already curbed....he's skidding on his face on the curb.  i'm going
to lunch i'll call you tonight.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/25/2004 11:25:30 AM
>>>
Kick him to the curb Deanna, you don't need this stuff! It sounds like
his heart is in two camps. Her's and yours.
-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, May 24, 2004 2:49 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.


maybe i am but seriously if the situation is not what i'm looking for
and the only person benefitting here is him whats the purpose? i'm not
trying to be all dramatic but yesterday he said that the girl told him
that if she found out he was seeing somebody else them she was going to
go all postal.  me being inquisitive as i am i asked him if he was
pleased by her comment he said no but i'm some dumb not plum dumb and
its what he didn't say.  he had a kind of smirk on his face and i don't
need that kind of drama.  my heart would hurt for her knowing what i've
been through if he's been playing us both but on the other hand if she
showed up at my door i'd get kicked out of charlotte because i would
give him and her jamielle's ass whoopin. and thats the truth.....!!!!!
so you see why i'm not so sure this is okay.  also more of his comments
are of a sexual nature. if he's touching me it has to be in that manner
and to tell you the truth sexually i'm not that pleased w/ his
performance

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/24/2004 1:10:52 PM
>>>
You big baby!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, May 24, 2004 12:07 PM
To: Conley, Abby
Subject: RE: Were in the paper again today.

3

i'm not saying that I don't but some things are just not worth the drama
and every time something like this happens i get a little less interested.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/24/2004 10:57:12 AM
>>>
You would not get your nose out of socket, if you didn't like him!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, May 24, 2004 10:42 AM
To: Conley, Abby
Subject: RE: Were in the paper again today.


well say something about the rest damn it

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/24/2004 10:44:31 AM
>>>
No, it's the only thing that made me happy!

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, May 24, 2004 10:38 AM
To: Conley, Abby
Subject: RE: Were in the paper again today.


is that the only thing you read

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/24/2004 10:33:43 AM
>>>
Your coming home? Oh goodie! When?

You can't write anonymous letters to the paper, they won't print them.

-----Original Message-----
From: Deanna Cosby [mailto:COSBYDE@co.mecklenburg.nc.us]
Sent: Monday, May 24, 2004 9:23 AM
To: Conley, Abby
Subject: Re: Were in the paper again today.


Is she currently a f.p if so I'm sure K. Krott will make sure that they
no longer get any children.  I feel like I should write an anonymous letter.

This week was odd, but good.  Friday Derek came over and he and I had a
nice evening.  Then Saturdat when he called he was in a bad mood.  He
just kept talking about his ex although he said he hadn't had any
contact w/ her.  then Sunday he came over for a while after I got out of
church and talked about her again over and over.  I told him I want for
him whatever he wants so if he's happy w/ or misses her he should try to
work it out he just looked at me.  Then I asked him what he was doing w/
me he said "we're just friends." then in a nasty voice he said, "now
does that answer your question."  So I just said yes.  Then about an
hour goes by and he said "whats wrong w/ you." I'm not mad  (4-real) but
I think I've settled for to long and I have learned my lesson for past
experiences and I just think I'm going to pumped the brakes on this

4

friendship.

Also I need to call ceel one as my calling plan is all screwed up.  I
called again yesterday and they said my calling plan in sun-sat free
nights from 9pm to 6am this is including the supposed free weekends.
When I come home nexy month I'm changing my plan.

>>> "Conley, Abby" <aconley@eriecountydhs.org> 05/24/2004 8:51:00 AM
>>>
ECOCY is in the paper again, I read part of the story online. They are
really hammering OCY. Here is a letter that is from the
foster mom who had the little girl in her home. She is sending this to
the paper.

ABC

Subject: letter to the editor
This letter is in tribute to a young lady who lived with us for 15
months. She was the most loveable, trusting child you could have
known. She recently has been in the news, as the fifteen year old who
was allegedly abused by her adopted mother.
I do not want to point a finger at any one agency, but I want people
to
learn from this lesson. There were numerous agencies
involved in this child/s life. Each person who came in contact with
her
had a chance to change what has been a tragic ending to a
beautiful life. Some people chose to look the other way, others to
ignore what seemed to be apparent. This child was crying for
help--maybe from her friends, maybe from her neighbors, maybe from her
relatives. During the last three years, I am sure there have
been other people who could have changed the course of this story. Let
each of us listen a little more, look harder, find the truth,
and BE INVOLVED. It can change the course of someone's life. It may be
too late for her, but it isn't too late for the next
child--and we know there are more. Become involved--advocate for
special needs children--for ALL children--do more--reach a
child--before it is too late. D████ M██████

Abby B. Conley

## Matt Granger

| | |
|---|---|
| **From:** | Conley, Abby |
| **Sent:** | Tuesday, May 04, 2004 11:42 AM |
| **To:** | 'abby@ilovejesus.net' |
| **Subject:** | FW: C▬▬ |

-----Original Message-----
**From:**    Conley, Abby
**Sent:**    Monday, April 19, 2004 11:01 AM
**To:**    Deveney, Sue
**Subject:**    ▬▬▬



Ca▬Sh▬▬
s.doc (33 KB...

## Matt Granger

| | |
|---|---|
| **From:** | Conley, Abby |
| **Sent:** | Tuesday, May 04, 2004 11:41 AM |
| **To:** | 'abby@ilovejesus.net' |
| **Subject:** | FW: S▬▬ |

-----Original Message-----
**From:**    Conley, Abby
**Sent:**    Monday, April 19, 2004 10:51 AM
**To:**    Deveney, Sue
**Cc:**    Schetter, Michele
**Subject:**    S▬▬



S▬▬CourtSumma
ry.doc (29 KB...

EXHIBIT C

**Matt Granger**

| | |
|---|---|
| From: | Conley, Abby |
| Sent: | Thursday, June 24, 2004 3:14 PM |
| To: | Cates, Nzinga |
| Subject: | RE: |

You and I need to talk, call me at home.

ABC

-----Original Message-----
| | |
|---|---|
| From: | Cates, Nzinga |
| Sent: | Thursday, June 24, 2004 1:26 PM |
| To: | Conley, Abby |
| Subject: | |

just wanted to let you know that the meeting went well. they did ask me about the incident with p████and the child (if i knew anything). i played completely dumb! she did smooth things over but i didn't let her get away from the point. i made it clear that i was going to be respected. she said that she talked to patti and if i had another problem that i should make sure i tell her to her face and let her know that what she said was inappropriate. she most likely did talk to her because patti has been overwhelmingly nice to me lately. she did tell me that she didn't really want me to go out on visits with you because she wanted me to see "the social workers point of view and the paperwork that gets done." you better not tell her i told you that!:)
i'll call you soon,
zin

**Matt Granger**

| | |
|---|---|
| From: | H████, M██ |
| Sent: | Thursday, June 24, 2004 3:04 PM |
| To: | Deveney, Sue; Cates, Nzinga; Conley, Abby; Schetter, Michele; Wozniak, Patricia |
| Subject: | RE: days off |

I am in training on 6/30....7/1 and 7/2 I have several app'ts but can cover either day, 7/2 probably being better than 7/1.

M███

-----Original Message-----
| | |
|---|---|
| From: | Deveney, Sue |
| Sent: | Tuesday, June 22, 2004 1:43 PM |
| To: | Cates, Nzinga; Conley, Abby; Hughes, Mike; Schetter, Michele; Wozniak, Patricia |
| Subject: | days off |
| Importance: | High |

I will be at Training on June 30th and off July 1 and 2. Please have your Bixlers ready by the end of this week (JUne 25th) so we have plenty of time for corrections and to be retyped. I will need unit coverage for those days and would appreciate it if M███, P███and Michele could each take a day. Please reply "to all" your preference. Mike is also at training on Wednesday the 30th so he cannot take that day.

Bixlers I have recorded that are due that week are R█████, Si█████, St███band G█████.

Thanks in adavnce. You are appreciated!! ~Sue~

8

**IMPRESSIONS/OBSERVATIONS:**

Mr. ██████ appears authentically happy to see his children when arriving to visits at the agency. Mr. █████ is consistent and has attended all possible visitations that this social service aide has facilitated. Mr. █████ is also very thoughtful in bringing girls gifts, clothes and toy's for special occasions. Both children appear content and happy interacting with their father during visits.

During the 12/30/04 visit, (time duration was from 10 a.m. to 11 a.m.) I entered the visitation room at 10:50 to tell Mr. ██████ that there was 10 minutes left until his visit ended. This prompt was given to Mr. █████ to allocate sufficient time for him to clean up the visitation room (there we're dozens of toy's, trash, and bags needing packed/picked up), also Mr. █████ need time to dress the children in their winter clothing before going outside. Mr. ██████ turned to this social service aide, and stated that "this is not the Wizard of Oz and I can't just click my heals and things are done" Mr. █████ then ordered that in the future, I would not order him around or use an authoritative tone with him in front of his daughters. The veins in Mr. ███████'s neck were strained and extended as he reprimanded my entrance. Mr. ██████ was also physically trembling, and his eyes were bulging from his eye sockets. I became very aware of my physical well-being at this point and was intimidated by Mr. ██████'s behavior. I explained to Mr. ██████ that the room was scheduled till 11:00, and that the next family was already waiting in the lobby. I simply was providing him a courtesy call, and that he had 10 minutes to get everything done. At 10:55 of this same visit, J██████ grabbed the electric cord from the video camera (Mr. █████ brought to visit) and attempted to place the plug into electric outlet. (Mr. █████ not watching) I re-entered room telling J██████ "no- don't do that" and told Mr. ██████ what J██████ was doing. Although Mr. ██████ had his back to his daughter and Jaelynn still had the electric cord in her hand standing in front of the outlet, Mr. ██████ insisted she "was not" going to put the plug in the outlet nor was she close to danger. Mr. ██████ started to clean up visiting room at 11:00. I asked him again to get girls ready and that visit was over. Mr. █████ shut visiting room door. I knocked on door and explained to Mr. ██████ visit was over. Mr. █████ became loud again stating that I would not talk to him in the manner in which I was, and that I could not snap my fingers and order him around. I told Mr. ██████ that another family was waiting to enter the room and it was not fair to short *that* family time because he was not ready. Mr. ██████ still speaking loud, hands and arms shaking, veins in neck showing, eyes open wide, again stated I will not tell him what to do, and he will not jump when told. I started getting J██████ ready. Mr. ██████ throwing items in bag, Mr. ██████ would not finish and leave room till 11:04. Mr. ██████ told family waiting he was sorry.

I have also observed Mr. ██████'s marginal ability to supervise both children at the same time. This can be exemplified by several common occurrences during visitations. There has been two occasions when this social service aide has, had to enter the visitation room to remove/take away and stop child from chewing and swallowing crayons while Mr. ██████ remained oblivious to it even occurring, or in one case denying it happened despite the fact I showed him the crayon after fishing it from his daughter's mouth. Another commonality is one or the other child climbing up or on, and falling off of furniture while Mr. ██████ is busy attending to the other child. There have been several incidents that one or the other child has fallen to the floor.

I have also observed on a consistent basis that Mr. ███████ smiles when his children cry, and will stand stationary observing his child for minutes, before consoling or embracing the child/daughter that is crying.

## COUNTY SOCIAL SERVICES AIDE COURT SUMMARY

**CHILD:** ▓▓▓ & ▓▓▓▓                    **PARENT:** ▓▓▓▓▓

**REPORT COMPLETED BY:** Abby B. Conley        **DATE:** 04/16/2004

**SOCIAL SERVICES AIDE SIGNATURE:** _____

**REVIEWED AND AFFIRMED BY:** _____
Case Supervisor

**PURPOSE OF REPORT:**

To provide written documentation of father/daughter interactions during visits, at the Office of Children and Youth.

**PERIOD OF INVOLVMENT:**

10/2003 to 04/2004

**SERVICE OBJECTIVES:**

Mr. C▓▓▓ will visit children twice a week for one hour intervals.

**ACTIONS TAKEN/SERVICES PROVIDED/TYPE OF ACTIVITY:**

Visits provided twice a week for one hour intervals at the Erie County Office of Children and Youth.

**CLIENT PROGRESS OR LACK OF PROGRESS:**

Mr. ▓▓▓▓ has attended all possible visits that this social service aide has facilitated. However the following dates he was at least several minutes late; 10/24/03, 12/5/03, 12/16/03, 12/30/03, 01/06/04, 01/27/04, and 02/10/04.

On 12/19/03 Mr. C▓▓▓ was 40 minutes late, and on 1/02/04 he was 23 minutes late.

**NEW/CONTINUED AREAS OF NEED:**

Mr. C▓▓▓ should be encouraged to monitor both children during visitations, to avoid one or both children from injuring them self. Arriving on time for visits is also an important priority.

## NEW/CONTINUED AREAS OF NEED:

This social service aide has no concerns or recommendations when it comes to parenting needs in the current or the future, when it pertains to Ms. S█████ she clearly excels in her parenting abilities.

Although this social service aids primary responsibility is to supervise visitations between Ms. S█████ and her twin daughters, Ms. S█████ has engaged this social service aide in various verbal conversations after visits. During these interactions it is apparent that Ms. S█████ would benefit from further domestic violence counseling, she admits she is a victim from her past relationship with the children's biological father, Mr. C█████.

Ms. S█████ should be encouraged to receive psychological counseling, she has openly admitted that she would not want to continue living if her children are taken away from her permanently.

Ms. S█████ seems to fluctuate from blaming Mr. C█████ for the children's original injuries, to declaring it was some kind of accident that the children suffered from. Ms. S█████ verbalizes confusion and has minimized the expectation of involved professionals that she should have been able to protect the children from injury.

## IMPRESSIONS/OBSERVATIONS:

Ms. S█████ does exceptionally well parenting and interacting with her children during visits. She is consistently involved with both of her twin daughters and equally divides herself between the two of them.

I have also observed Ms. S█████ has strong maternal characteristics towards her twin girls. This is obvious by her quick response if one or both of the children are doing something that could be potentially harmful or cause injury, Ms. S█████ is quick to intervene to insure children's safety and well-being.

Ms. S█████ consoles, plays, laughs, sings, embraces, and shows affection to her daughters during visits. Both girls appear to be strongly bonded with their mother also. Ms. S█████ will inquire about the children's needs such as clothing, toys and has often volunteered to provide anything that they might need. She has also organized, and succeeded in having Easter pictures completed of her and the twins.

From:           Conley, Abby
Sent:           Tuesday, July 06, 2004 4:36 PM
To:             Deveney, Sue
Subject:        ▓▓▓▓▓Court Summary

## COUNTY SOCIAL SERVICES AIDE COURT SUMMARY

**CHILD:** J▓▓▓ & ▓▓▓▓            **PARENT:** ▓▓▓▓ S▓▓▓▓

**REPORT COMPLETED BY:** Abby B. Conley        **DATE:** 07/9/2004

**SOCIAL SERVICES AIDE SIGNATURE:**

**REVIEWED AND AFFIRMED BY:**

                                Case Supervisor

**PURPOSE OF REPORT:**

To provide documentation of the observations made during family visits between mother and children.

**PERIOD OF INVOLVMENT:**

10/2003 to 07/2004

**SERVICE OBJECTIVES:**

Visits will occur 2 times a week, for one hour duration.

To transport children to visits, observe interactions between both children and their mother.

**ACTIONS TAKEN/SERVICES PROVIDED/TYPE OF ACTIVITY:**

Children transported, visits supervised, and written documentation provided.

**CLIENT PROGRESS OR LACK OF PROGRESS:**

1

Ms. S███████ has attended all possible scheduled visits that this Aide has facilitated. Ms. S███████has been on time for every visit except for one, where she was 5 minutes late due to attending a mandatory hearing.

## NEW/CONTINUED AREAS OF NEED:

Ms. S███████ has shared with this Aide that she has been a victim of domestic violence, Ms. S███████ would benefit from continued counseling.

## IMPRESSIONS/OBSERVATIONS:

Both children embrace their mother with hugs, and kiss' when they first arrive to visits. Children smile, and often compete for their mother's attention within the one hour visit.

Ms. S███████ brings children new toys and clothing at least once a month. Ms. S███████ will ask the children's foster mother what the children's preference for breakfast food or snacks currently is. Ms. S███████will then will bring that particular food or snack to the next visit.

Ms S███████ often brings a camera and takes the girls pictures during visits. Ms. S███████ has also had the children's pictures professionally taken during the Easter holiday. Ms. S███████ will frequently comb and style her daughters hair through out the visit.

Ms. S███████consoles, plays, laughs, sings, embraces, and shows affection to her daughters during visits. Both children smile and interact with their mother during visits. Ms. S███████ will inquire about the children's needs such as clothing, toys and has often volunteered to provide anything that they might need.

Ms. S███████remains vigilant in her inquires of the children's health maintenance, asking the foster parent various questions about medical schedule and current, updated information.

During visits, that the Public Health Nurse is present, Ms. S███████will frequently ask questions about the children's developmental stages, and whether the children are at appropriate levels for their age. If Ms. S███████ is given suggestions, or opinions, by the Nurse, Ms. S███████will practice and exercise those methods provided by the Public Health Nurse during the course of future visits I.E. word pronunciation, colors, fine motor skill exercises, and various other activities.

Ms. S███████also intercepts and disciplines children if their behavior merits such. Ms. S███████ will correct her children with such commands, such as, no or don't do that.

Ms. S███████is aware of children's needs during visits, Ms. S███████will change diapers, and care for children's grooming needs through out the course of visit.

Ms. S███████ has engaged both children in games, which create an environment of laughter and joy. One incident involved both children guiding a push toy that made popping sounds. Ms. S███████ ran around the room as the children chased her with the pop toy. Both children and Ms. S███████ laughed.

Ms. S███████ has children participate in arts and craft activities, such as coloring and molding play dough creations.

2

## COUNTY SOCIAL SERVICES AIDE COURT SUMMARY

CHILD:  J████ & J████            PARENT:  J████ S████

REPORT COMPLETED BY:  Abby B. Conley         DATE: 04/19/2004

SOCIAL SERVICES AIDE SIGNATURE:  _____

REVIEWED AND AFFIRMED BY: _____
                                               Case Supervisor

### PURPOSE OF REPORT:

To provide documentation of the observations made during family visits between mother and children.

### PERIOD OF INVOLVMENT:

10/2003 to 04/2004

### SERVICE OBJECTIVES:

Visits will occur 2 times a week, for one hour duration.

To transport children to visits, observe interactions between both children and their mother.

### ACTIONS TAKEN/SERVICES PROVIDED/TYPE OF ACTIVITY:

Children transported, visits supervised, and written documentation provided.

### CLIENT PROGRESS OR LACK OF PROGRESS:

Ms. S████ has attended all possible scheduled visits that this social service aide has facilitated. Ms. S████ has been on time for every visit except for one, where she was 5 minutes late due to attending a mandatory hearing.