# Appendix Exhibit 24

Article published Sep 17, 2004

# Telephone number crucial to aide's case

By Ed Palattella
ed.palattella@timesnews.com

A single telephone number is central to what is becoming the complex case of Abby Conley.

Officials with the administration of Erie County Executive Rick Schenker told Conley that she had to resign her county post because she disclosed the phone number, which the administration considered "confidential information," said Fiore Leone, the chairman of Erie County Council.

Conley was an aide in the Erie County Office of Children and Youth when she was ousted Sept. 10. Leone said Conley told him that the administration officials demanded her resignation after accusing her of disclosing the telephone number of an OCY client to a former caseworker who had handled the client's case at OCY.

Leone said Conley told him that the client agreed to the disclosure of the telephone number. He said she also told him that OCY went through her month-old e-mails to find that she had disclosed the number.

Leone said he found the concern about the disclosure an unconvincing reason for the county to demand a resignation from someone.

"Others have done worse than that" and stayed on the job, said Leone, who said he is pondering an investigation into Conley's ouster.

Conley's lawyer said he is also suspicious about the reasons the Schenker administration let Conley go. Attorney Anthony Angelone declined to be specific about what Conley told him about her dismissal, but he said he believes Schenker wanted Conley gone after she testified against OCY at a court hearing July 28.

"The reasons that they gave her for her termination are obviously pretexts for some other motivation," Angelone said.

Conley declined comment. Angelone said the administration forced Conley into signing a pre-written resignation letter that Conley had not seen before the meeting on Sept. 10. And Angelone said administration officials told Conley that they would consider pressing criminal charges over the disclosure of the phone number if she did not sign the letter.

"They said they were weighing all their options, including whether or not charges should be filed," Angelone said.



Angelone, who said Conley is considering legal action against the county, also said the Schenker administration arranged to have Conley sign the letter late in the day on Sept. 10.

"It was coerced," Angelone said. "It is 4:15 p.m. on a Friday, and from what (she is) telling me, if you read between the lines, you either sign the resignation or you might be locked up for the weekend."

Angelone said a representative of Conley's labor union was present at the meeting. That person could not be reached for comment Thursday.

District Attorney Brad Foulk said no one from the Schenker administration ever asked him about charging Conley.

"No one contacted me about the filing or the possibility of filing charges against her," Foulk said.

Schenker has declined comment, citing what he said are confidentiality rules regarding county personnel issues. Hours before he arranged to have Conley dismissed, however, Schenker told the Erie Times-News that he planned to terminate her from her position, and that the action had nothing to do with Conley's testimony or her being a "whistle-blower." He declined further comment at that time.

ED PALATTELLA ***can be reached at 870-1813 or by e-mail.***

Last changed: Sep 16, 2004

See this story as it was printed in Erie Times-News' electronic edition. **Click here for a FREE trial**.

This content provided by GoErie.com/Erie Times-News is copyrighted material and all rights are reserved. You may not reproduce this or distribute it electronically, in print or otherwise without **written permission**.

Article published Sep 17, 2004

# Council eyes OCY probe

## Leone questions departure of employee who testified against agency

Read More Local News

By Ed Palattella
ed.palattella@timesnews.com

The chairman of Erie County Council is threatening to call an investigation into the ouster of an aide who testified against the county Office of Children and Youth.

Fiore Leone said he is concerned about how Erie County Executive Rick Schenker handled the dismissal.

Leone said he will poll his fellow council members on whether they want to launch what is known as a councilmanic investigation, which could include a public hearing into the circumstances surrounding the departure of the OCY aide, Abby Conley, a week ago.

"I am going to ask council to review everything," Leone told a council committee on Thursday. "There is a lot of smoke here. When there is a lot of smoke, there is fire."

Conley was let go about a month and a half after she testified in court that her supervisor at OCY altered court documents.

Leone's remarks came on a day that included other developments in Conley's case. Also on Thursday:

— The head of the county department that oversees OCY said he did not know that the OCY staff or Schenker took action against Conley until after she was ousted.

"I didn't know they were going to take disciplinary action until after it happened," said Charles Barber, the director of the county Department of Human Services.

— The lawyer for Conley said Conley is contemplating suing the county. Attorney Anthony Angelone said that based on what Conley told him, Schenker and officials at OCY "coerced" Conley into signing a prewritten letter of resignation, and that Schenker used unfounded reasons to get rid of her.

Angelone declined to be specific. Leone said Conley told him that officials with the Schenker administration reviewed Conley's e-mail and told her she had illegally disclosed "confidential information" in a matter that occurred weeks before the court hearing at which she testified. That hearing was July 28.

Angelone said the officials told Conley that they would consider filing criminal charges



against her if she did not sign the resignation letter.

"The reasons that they gave her for her termination are obviously pretexts for some other motivation," Angelone said.

Conley declined comment and referred questions to Angelone.

Schenker said he would not comment, citing what he said are confidentiality rules. "We don't talk about personnel matters," Schenker said.

Schenker did not return a telephone call seeking comment on follow-up questions, including Barber's statement that he had no idea Conley was being let go.

Schenker is Barber's boss. Schenker arranged for Conley's dismissal on Sept. 10. Hours before that dismissal, Schenker told the Erie Times-News that he planned to terminate Conley from her position, and that she was not being let go because she was a "whistle-blower."

Schenker told the newspaper he could not be more specific because of the confidentiality rules. County Solicitor John Onorato, Schenker's top legal adviser, later told the Erie Times-News that Conley resigned.

Conley's ultimate supervisor at OCY was Debra Liebel, the agency's executive director. She also said she would not comment.

"I can't," she said Thursday. "It's confidential."

Leone, the head of the seven-member County Council, made his comments about a possible investigation at council's Finance Committee. Only three council members would need to vote in favor of an investigation for a probe to happen, Leone said. Council comprises four Democrats, including Leone, and three Republicans. Schenker is a Republican.

Liebel attended the committee meeting with Barber, the head of the Department of Human Services. Barber pledged to assist Leone in finding out what happened at OCY.

"I look forward to working with you," Barber told Leone.

Leone said he has concerns with OCY other than Conley's case. He alluded to the May 9 death of 15-year-old B[redacted] L[redacted], whom OCY placed with an adoptive mother in 2001.

The adoptive mother, L[redacted] M. I[redacted], is awaiting trial in connection with Legler's death. She is accused of the felonies of aggravated assault and endangering the welfare of a child and the misdemeanor of recklessly endangering another person. Police allege

I[redacted] caused more than 200 bruises and other injuries to L[redacted]

According to the arrest warrant for I[redacted] and other information in the case, the Millcreek Township School District repeatedly complained of the suspected abuse to OCY, though the office did not forward the complaints to the police.

Leone on Thursday referred to L[redacted] as "that poor child" and said council needs to know more about how OCY handled [redacted]s case.

"There are a lot of things going on in this county that council does not know about," Leone told the Finance Committee, which was discussing funding requests from OCY.

In an interview after the hearing, Leone said he was dismayed by the information that Barber said he was not aware of Conley's ouster until after it occurred.

"They went around even the department head," Leone said. "It does concern me. I think some games are being played by the county executive to take care of only the people he wants to take care of."

OCY investigates allegations of child abuse and neglect and places children in foster care or adoptive homes. Conley had worked for the county for 13 years, including four as a social-service aide for OCY. Conley assisted troubled parents who were trying to win reunification with children that OCY had removed from the parents' homes.

Her work as an aide led Conley to testify against OCY at a court hearing before Erie County Judge Elizabeth Kelly on July 28. At the request of the mother in the case, Conley testified about whether she thought the mother and the father should be reunited with their 2-year-old twin girls, whom OCY had placed in foster care over claims of abuse. The parents said the claims were unsubstantiated.

Conley testified that the original document she prepared for court said the mother "clearly excels" as a parent and was doing "exceptionally well" caring for the twins in supervised visits. Conley also testified that her supervisor at OCY, Sue Deveney, altered her court summary. Conley said Deveney took out the supportive language and made the summary less favorable to the mother.

As she cried on the witness stand, Conley said she feared losing her job if she testified about the alteration of the court summary. According to a transcript of the hearing, Judge Kelly told Conley: "You don't need to be afraid. You are to never lie in this courtroom, and you are not going to lose your job based on anything that occurred in this courtroom today."

Kelly ruled against OCY and ordered the agency to work toward reuniting the twins with their parents. She called the changes to the court summary "very clear to me," according to the transcript.

The Schenker administration has defended how OCY and Deveney handled the case Conley testified about.

Kelly declined comment on Thursday. "The transcript speaks for itself," she said.

ED PALATTELLA ***can be reached at 870-1813 or by e-mail.***

Last changed: Sep 17, 2004

See this story as it was printed in Erie Times-News' electronic edition. **Click here for a FREE trial**.

This content provided by GoErie.com/Erie Times-News is copyrighted material and all rights are reserved. You may not reproduce this or distribute it electronically, in print or otherwise without **written permission**.

Article published Sep 25, 2004

# Union wants county to rehire ousted aide

## Youth agency worker said to resign 'under duress'

By Ed Palattella
ed.palattella@timesnews.com

A labor union is demanding that Erie County government reinstate an aide who was ousted from the county Office of Children and Youth.

The Local 2666 of the American Federation of State, County and Municipal Employees is claiming that Abby Conley's Sept. 10 resignation was tantamount to a firing without just cause.

The union is arguing that Conley resigned under unfair pressure.

Conley "was asked to sign (the) resignation letter under duress with threat of criminal charges," according to a grievance that the Local 2666 filed with the county on Thursday. "Progressive, normal disciplinary actions were not utilized. This was a constructive discharge."

The grievance demands that the county return Conley "to her previous position and make her whole again."

Conley, who worked as a social-service aide for OCY, was let go a month and a half after she testified against her supervisor during a child-dependency hearing in Family Court.

The administration of Erie County Executive Rick Schenker has said that other factors motivated the request for Conley's resignation, though Schenker and his staff have provided no details.

Erie County Council Chairman Fiore Leone is considering calling for a council-led investigation into Conley's case and other issues at OCY.

Karen Dorich, the president of the AFSCME Local 2666, filed the grievance that demands Conley get her job back. The grievance now goes to the Schenker administration, which has 15 days to respond. If the administration and the union fail to resolve the grievance, the case could go to arbitration — a process that could take months.

Conley, 43, had worked in Erie County government for 13 years, including her four years at OCY, where she earned $27,437 a year. Conley has retained a lawyer to explore whether to sue the county over her dismissal. Anthony Angelone, the lawyer, has said he believes the county used unfounded reasons to force Conley to resign

because she had acted as a whistle-blower over concerns at OCY.

Conley testified July 28 that her supervisor altered court documents to make a report less favorable to a mother trying to win reunification with her 2-year-old twin girls, whom OCY had placed in foster care. Conley was the case aide.

Angelone said he is still gathering information on Conley's case.

"We are glad that the union is getting involved and is seeing this for what it really is," he said.

The lawyer representing the Local 2666 in Conley's case is Alaine Williams of Philadelphia. She said the union defines a "constructive discharge" as an unjustified firing.

"This was really not a voluntary resignation," Williams said. "Given the nature of what was said, and the manner of how it was said, and the timing, the union believes all those things together make it a constructive discharge."

Conley and Angelone have declined comment on the reasons the county gave for dismissing Conley. Administration officials, citing confidentiality rules regarding personnel, have declined to provide specifics about Conley's ouster.

Before Conley resigned, Schenker and his chief legal adviser, county Solicitor John Onorato, told the Erie Times-News that the county planned to arrange for Conley's dismissal, and that her ouster had nothing to do with her being a whistle-blower or her testimony. The administration has also defended the conduct of OCY supervisor Sue Deveney, against whom Conley testified.

Leone, the council chairman, has said Conley told him that administration officials claimed she had violated OCY's confidentiality policy. Leone said Conley told him that the administration accused her of using OCY e-mail to supply an OCY client's telephone number to a former OCY caseworker. Leone said Conley told him that the client had given Conley permission to provide the number to the former caseworker.

Dorich, the Local 2666 president and a clerk at the Erie County Courthouse, said she was at the Sept. 10 dismissal meeting along with Conley, Onorato, county Personnel Director Peter Callan and the executive director of OCY, Debra Liebel. Dorich said Onorato and the other officials asked Conley to sign a prewritten resignation letter.

Dorich said the dismissal meeting occurred at about 4:15 p.m. on a Friday, 15 minutes before the county offices closed.

Dorich said the officials told Conley that she had violated county policy through "improper usage of the computer at work'" and by violating OCY's confidentiality rules,

which OCY said could lead to criminal charges.

Dorich said Onorato and the other officials warned Conley to sign the resignation letter. "They alluded to the fact that if she didn't sign it, there would be a hearing. I took that possibly that charges would be filed against her."

District Attorney Brad Foulk has said no one in OCY contacted him about a possible prosecution of Conley.

Dorich said Conley expressed concern about losing unemployment benefits if she did not sign the letter. Dorich also said Conley told the officials that she wanted time to think about the resignation request over the weekend.

"I asked them if the offer to resign would still be on the table on Monday, and they said no," Dorich said. "I don't believe that was an option, that she would be allowed to resign again (on Monday). It would be more like a firing."

ED PALATTELLA, can be reached at 870-1813 or by e-mail.

Last changed: Sep 25, 2004

See this story as it was printed in Erie Times-News' electronic edition. **Click here for a FREE trial**.

This content provided by GoErie.com/Erie Times-News is copyrighted material and all rights are reserved. You may not reproduce this or distribute it electronically, in print or otherwise without **written permission**.

Back to: http://www.goerie.com/apps/pbcs.dll/article?AID=/20041004/FRONTPAGE/110040387

Article published Oct 4, 2004

# Aide: Worker rough with tot

## Appeal claims Conley's resignation forced after she reported behavior to OCY



Abby Conley (Jack Hanrahan / Erie Times-News)

Zoom
Buy this Photo

Read More Local News

By LISA THOMPSON
lisa.thompson@timesnews.com

The Office of Children and Youth paid Abby Conley to report on visits between troubled parents and children.

But it was what Conley reported about OCY workers — that a caseworker roughly handled a child and a supervisor altered court records — that she claims cost her her job.

Conley filed an appeal with the State Civil Service Commission Thursday alleging she was forced to resign from her job in September because she exposed wrongdoing by OCY workers.

Conley said she witnessed an OCY caseworker "forcefully" grab a 3-year-old child's face and shake it and yell while getting the child out of a car seat during a supervised visit on June 4.

Conley said she reported the incident to a supervisor.

She believes the incident was later investigated by the Pennsylvania Department of Public Welfare and was determined not to be abuse.

In addition, Conley testified July 28 in court that her supervisor altered court documents to make a report less favorable to a mother trying to win reunification with her twin 2-year-old daughters, whom OCY had placed in foster care.

Conley, a social service aide, says these reports, and not her alleged violations of department policy, led to her ouster.



On Friday, Sept. 10, near the close of business, Conley says she was summoned to the Erie County personnel office and given the choice to either sign a prepared resignation letter and release the county from liability or be fired and face what she was led to believe was a possible criminal investigation.

Conley says in the meeting, officials in the administration of County Executive Rick Schenker told her she violated policy by passing on a client's phone number and by using the county computers and e-mail to review work on her school thesis.

"I believe that the reasons given for my termination were a pretext and that I was, instead, being punished for reporting inappropriate behavior of a supervisor (the caseworker) and/or testifying regarding a supervisor's alteration of a court summary. I was afraid when I signed the 'resignation' letter and signed it under duress. I felt that I had no choice. I do not believe I should have lost my job because of my actions," Conley wrote in a statement attached to her civil service appeal.

Conley wants the commission to reinstate her to her job with back pay.

The statement she attached to her civil service complaint marks the first time her explanation of the circumstances of her termination have been made public.

In addition, it represents the first time her allegations about witnessing a caseworker's rough handling of a toddler have been made public and listed as a possible cause of her termination.

Her lawyer, Anthony Angelone, said Conley has a strong case.

"The actions they took and the reasons they gave for her discharge were in violation of the (law)," he said.

"What we presented to the Civil Service Commission is a brief outline. We feel there are actually more details that could potentially come out exposing other wrongdoing at the agency," he said, declining to elaborate.

"As more facts do come out at the public hearing, it is going to be very obvious the reason they gave for her firing was pretextual," he said.

Erie County solicitor John Onorato said Friday the county cannot comment on Conley's action because it is a pending legal matter.

Before Conley resigned, Schenker and Onorato, his chief legal adviser, told the Erie Times-News that the county planned to arrange for Conley's dismissal, and that her ouster had nothing to do with her being a whistle-blower or her testimony.

The administration has also defended the conduct of OCY supervisor Sue Deveney,

against whom Conley testified.

Michael Cauley, the lawyer for OCY, declined comment Friday.

Erie County Council Chairman Fiore Leone is considering calling for a council-led investigation into Conley's case and other issues at OCY, including the death of 15-year-old B[redacted] L[redacted] in the care of her adoptive mother, L[redacted] I[redacted], and the previously secret $100,000 settlement agreement between child-welfare caseworker D[redacted] A. D[redacted], 58, and Schenker's administration.

Leone was out of town Friday and could not be reached for comment on the new allegations against OCY in Conley's appeal.

Fred Smith, chief counsel for the State Civil Service Commission, said a committee will review Conley's appeal on Oct. 19.

If it is accepted for consideration, a public hearing likely will be scheduled in late November or early December in Pittsburgh, where witnesses for both sides would testify, he said.

After that, the parties will likely file written legal arguments. A decision would follow within 90 days of the receipt of those briefs.

Smith said the commission is charged with making sure workers are not victimized by political forces or discrimination.

"We're here to ensure people hired to work in state positions are retained based on their ability to do the job and not separated for other reasons unrelated to their ability to do their job," he said.

In Conley's case, the commission would need to examine a number of factors.

One would be to determine if Conley's termination was voluntary, Smith said.

The commission's decision — whether it reinstates Conley or does not — would be binding. But either party could appeal to the state Commonwealth Court, Smith said.

Conley, 43, had worked in Erie County government for 13 years, including four years at OCY, where she earned $27,437 yearly.

Her appeal to the State Civil Service Commission comes in conjunction with a grievance her labor union, Local 2666 of the American Federal of State, County, and Municipal Employees, filed on her behalf Sept. 23.

The county had 15 working days from Sept. 23 to respond. Karen Dorich, president of

the AFSCME Local 2666, said Friday the county has not yet responded.

LISA THOMPSON, can be reached at 870-1802 or by e-mail.

Last changed: Oct 4, 2004

See this story as it was printed in Erie Times-News' electronic edition. **Click here for a FREE trial**.

This content provided by GoErie.com/Erie Times-News is copyrighted material and all rights are reserved. You may not reproduce this or distribute it electronically, in print or otherwise without **written permission**.

Article published Nov 23, 2004

# Ousted Office of Children and Youth aide drops appeal

By Ed Palattella
ed.palattella@timesnews.com

An ousted child-welfare aide has dropped her appeal against Erie County government, saying that pursuing the claim is not in her "best interest."

Abby Conley, formerly an aide with the county Office of Children and Youth, on Monday withdrew the appeal she filed with the state Civil Service Commission.

The commission was to meet in Pittsburgh today to hear evidence on Conley's request for reinstatement to her $27,437-a-year job.

Conley referred questions to her lawyer, Anthony Angelone, who was unavailable for comment. In a letter to the Civil Service Commission, Angelone wrote that "Conley has determined that it is not in her best interest to proceed with the state Civil Service Commission appeal."

The lawyer the county retained for the Civil Service appeal, Roger Taft, said the county was ready for today's hearing. Taft said he had lined up witnesses and prepared exhibits.

"We were frankly looking forward to the opportunity to present the county's side of the dispute," Taft said. "We were very confident that we would prevail."

Conley was claiming that the administration of county Executive Rick Schenker forced her to resign on Sept. 10 because she had exposed wrongdoing by caseworkers at the Office of Children and Youth, or OCY.

Conley's ouster came about a month and a half after she testified in court against her supervisor at OCY, which handles cases of neglected and abused children. Conley testified that the supervisor altered court records — a claim the county has disputed.

Officials with the Schenker administration claimed they asked for Conley's resignation because she violated OCY's confidentiality rules.

Conley appealed to the Civil Service Commission because OCY workers must pass a civil-service test to be hired. The three-member commission can order an ousted employee rehired with back pay, but the commission typically does not consider whether an employee should get monetary or punitive damages, as in a court case, said Daniel Tomaso, the commission's chief of appeals.

Conley also has filed a grievance with the OCY labor union, Local 2666 of the American Federation of State, County and Municipal Employees, in an attempt to get her job back. And Angelone has said Conley is contemplating filing a suit over her ouster.

Whether Conley will pursue the grievance or a suit was unclear Monday.

If Conley were to file suit over her ouster, she could demand that the county compensate her for the money she lost as the result of leaving her job as an OCY aide, where she had worked for four years. Conley, 43, had worked for the county in other jobs over the previous nine years.

Conley on Sept. 10 signed a letter of resignation that she said county officials prepared for her. She claimed the Schenker administration threatened to have her prosecuted if she did not resign, and that her dismissal was tantamount to a firing without just cause.

Conley and the county have disagreed over the reasons that the county demanded her resignation. In her Civil Service appeal, filed Sept. 29, Conley said county officials told her on Sept. 10 that she had violated OCY rules by using her office e-mail in June to disclose the telephone number of an OCY client to the client's former caseworker.

The county gave its most detailed reasons for the action against Conley in an Oct. 13 memo that Schenker's personnel director, Peter Callan, wrote in response to the union grievance over Conley's ouster. The memo makes no mention of the telephone number, but says Conley disclosed a confidential court order "with the intent of alerting" the mother who was the subject of it.

Conley and her lawyer, Angelone, have called the county's explanations groundless. Conley said in her Civil Service appeal that she believes the county was upset with her because she had testified against her supervisor and because she had told another supervisor that she had witnessed an OCY caseworker shake a 3-year-old during an OCY-supervised visit in June.

"I believe that the reasons given for my termination were a pretext and that I was, instead, being punished for reporting inappropriate behavior of a supervisor (the caseworker) and/or testifying regarding a supervisor's alteration of a court summary," Conley wrote in her Civil Service appeal.

"I was afraid when I signed the 'resignation' letter and signed it under duress. I felt that I had no choice. I do not believe I should have lost my job because of my actions."

Schenker has not commented on Conley's ouster, other than to say his administration did not ask for her resignation because she was a whistle-blower or because she testified against her supervisor.

ED PALATTELLA, can be reached at 870-1813 or by e-mail.

Last changed: Nov 23, 2004

See this story as it was printed in Erie Times-News' electronic edition. **Click here for a FREE trial**.

This content provided by GoErie.com/Erie Times-News is copyrighted material and all rights are reserved. You may not reproduce this or distribute it electronically, in print or otherwise without **written permission**.

858026