IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABBY B. CONLEY, <br>      Plaintiff <br>      v. <br> COUNTY OF ERIE, ERIE COUNTY OFFICE OF CHILDREN AND YOUTH, a/k/a ERIE COUNTY CHILD WELFARE SERVICE, RICHARD SCHENKER, individually and in his capacity as County Executive of Erie County, Pennsylvania, PETER CALLAN, individually and in his capacity as Erie County Director of Personnel, DEBRA LIEBEL, individually and in her capacity as Executive Director, Erie County Office of Children and Youth, a/k/a Erie Child Welfare Service and JOHN A. ONORATO, ESQUIRE, individually and in his capacity as Erie County Solicitor, <br>      Defendants. | JURY TRIAL DEMANDED <br><br> CIVIL DIVISON <br><br> No.: 05-CV-76E <br><br> Honorable Judge Sean J. McLaughlin |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF RICHARD SCHENKER, DEBRA LIEBEL, AND PETER CALLAN**

AND NOW, comes Defendants Richard Schenker, Peter Callan and Debra Liebel, Individually, by and through their attorneys, Law Office of Joseph Weimer, and Edmond R. Joyal, Jr., Esquire, and files the within Brief in Support of Motion for Summary Judgment, stating as follows:

**I.  STATEMENT OF THE CASE**

This action was filed on behalf of Abby Conley against Erie County, Erie County Office of Children and Youth, Richard Schenker, County Executive of Erie County, Peter Callan, Erie County Director of Personnel, Debra Liebel, Executive Director of the Erie County Office of Children and Youth, and John Onorato, Erie County Solicitor.  Plaintiff alleges that her resignation was coerced in retaliation for the exercise of her rights secured by the First and Fourteenth Amendments to the Constitution of the United States for giving truthful testimony under oath in a court proceeding and for making a good faith report of violations of Agency

policy and the criminal laws of the Commonwealth of Pennsylvania. Further, Plaintiff alleges that she was subjected to defamatory statements, to the detriment of her good reputation, for reasons of personal animus. *See, Complaint*, ¶1.

The Complaint identifies violations of 42 U.S.C. §1983, conspiracy to violate 42 U.S.C. §1983, violation of the Whistleblower Law at 43 Pa. C.S. §1421 et. seq., and wrongful discharge. The Complaint further alleges claims against Mr. Schenker, in his individual capacity, for defamation and violation of 42. U.S.C. §1983. Plaintiff requests damages in excess of $75,000, together with prejudgment interest, attorneys' fees, costs, punitive and exemplary damages and other relief the Court deems just.

Defendants Schenker, Liebel and Callan adopt and incorporate by reference the Concise Statement of Material Facts filed by Defendant Onorato and the County of Erie and the Erie County Office of Children and Youth as though set forth at length herein as well as the appendix and exhibits attached to the Motion and Brief supporting said motions of Defendant Onorato and the County of Erie and Erie County Office of Children and Youth. These Defendants also adopt and incorporate by reference the arguments contained in Onorato's Motion and Brief as well as those set forth in the Motion and Brief of the County of Erie and the Erie County Office of Children and Youth to the extent that this Brief does not make individual arguments on behalf of these Defendants.

## II. STANDARD OF REVIEW

This Honorable Court has summarized the appropriate standard of review in ruling upon these Defendants' Motion for Summary Judgment as follows:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In resolving a motion for summary judgment, the Court must consider the evidence and draw all

2

> reasonable inferences arising therefrom in the light most favorable to the non-movant and determine whether the evidence, so construed, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.ED.2d 202 (1986). There, as here, the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if admissible, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the nonmoving party must go beyond its pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue for trial. *Id*. at 324, 106 S.Ct. 2548.

*Vantassel v. Brooks*, 355 F.Supp.2d 788, 791 (W.D.Pa. 2005)

### III. ARGUMENT

**A.     PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED.**

This Honorable Court has summarized the law applicable to a plaintiff's §1983 First Amendment retaliation claim as follows:

> The Supreme Court has recognized that public employees have a First Amendment interest in speaking freely on matters that are of public concern. *See, City of San Diego, California v. Roe*, ____ U.S. _____, 125 S.Ct. 521, 523, 160 L.Ed.2d 410 (2004); *Perry v. Sindermann*, 408 U.S. 594, 597, 92 S.Ct. 2694, 33 L.Ed.2d 470 (1972); *Pickering v. Board of Educ.*, 391 U.S. 563, 571-72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). That is because "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers" and, therefore, if public employees could not freely speak to such matters, "the community would be deprived of informed opinions on important public issues." *City of San Diego*, ____ U.S. at ____, 125 S.Ct. at 525 (citing *Pickering*, 391 U.S. at 572, 88 S.Ct. 1731). Thus, "[t]he interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." *Id.* At the same time, however, a government employer has a legitimate interest in promoting efficiency, integrity, and discipline among its workforce and, to that end, it may impose certain restraints upon the speech of its employees. *City of San Diego, supra*, at 523; *Connick v. Myers*, 461 U.S. 138, 146, 150-51, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering*, 391 U.S. at 468, 88 S.Ct. 1731.
>
> To accommodate these competing concerns, courts apply a three-step test when confronted with a public employee's claim that he was retaliated against for engaging in protected activity. *See, Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. First, the employee must establish the "protected" nature of his conduct by showing that the speech in question involves a matter of public concern and that

3

> the employee's interest in the speech outweighs the public employer's countervailing interest in providing efficient and effective services to the public. *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004) (citing *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996)); *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). Second, the employee must demonstrate that the protected speech was a "substantial or motivating factor in the alleged retaliatory action." *Curinga*, 357 F.3d at 310 (citing *Baldassare*, 250 F.3d at 194-95; *Green v. Philadelphia Housing Authority*, 105 F.2d 882, 885 (3d Cir. 1997)). If the employee can meet his burden at steps 1 and 2, the employer can nonetheless avoid liability by showing "that it would have taken the adverse action even if the employee had not engaged in protected conduct." *Id.* (citing *Pro*, 81 F.3d at 1288). The inquiry at step 1 is a question of law, but the inquiries at steps 2 and 3 involve questions of fact. *Id.*

*Vantassel v. Brooks*, 355 F.Supp.2d at 797.

Although the issue of whether the protected speech was a substantial or motivating factor for the alleged retaliatory action, and the issue of whether the employer would have taken the adverse action even if the employee had not engaged in the protected conduct, are generally questions of fact, those issues may be decided on summary judgment where the evidentiary materials of record would be insufficient to carry the non-movant's burden of proof at trial. *See*, *Vantassel*, 355 F.Supp.2d at 791. In *Maestas v. Segura*, 416 F.3d 1182 (10th Cir. 2005), the United States 10th Circuit Court of Appeals held that to withstand summary judgment, an employee must produce evidence linking the employer's action to the employee's speech. *Maestas*, 416 F.3d at 1188. The Court stated:

> Speculation or hunches amidst rumor and innuendo will not suffice. See, *Perez v. Pierluisi*, 339 F.3d 43, 56 (1st Cir. 2003). Nor can a plaintiff sustain his burden at step 3 "simply by showing that the elimination of the protected activity may have been welcomed by the defendants." *Wright v. Illinois Dept. of Children and Family Servs.*, 40 F.3d 1492, 1500 (7th Cir. 1994) (internal quotations omitted); *accord Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996).

*Maestas*, 416 F.3d at 1189.

In the case at bar, Plaintiff's speech did not involve matters of public concern, and her interests in that speech were outweighed by the County's interests in providing efficient and

effective services to the public. Furthermore, the Plaintiff cannot present any evidence that her claims against PW, Susan Deveney, or her testimony of July 28, 2004 were substantial motivating factors for the alleged adverse employment activity.

1. **Plaintiff's First Amendment Claims Must Be Dismissed, as Plaintiff Can Present Absolutely No Evidence That Her Reporting of PW or Her Testimony of July 28, 2004 Were Substantial Motivating Factors for Her Resignation.**

   In the interest of judicial economy these Defendants adopt and incorporate by reference the arguments set forth in the Brief Supporting John Onorato's Motion for Summary Judgment as well as those of the County of Erie and the County of Erie Office of Children and Youth.

2. **Plaintiff's Alleged Speech Did Not Involve Matters Of Public Concern and Her Interests in that Speech Were Outweighed by the County's Interests in Providing Efficient and Effective Services to the Public.**

   In the interest of judicial economy these Defendants adopt and incorporate by reference the arguments set forth in the Brief Supporting John Onorato's Motion for Summary Judgment as well as those of the County of Erie and the County of Erie Office of Children and Youth.

B. **PLAINTIFF'S CLAIMS FOR VIOLATION OF THE PENNSYLVANIA WHISTLEBLOWER LAW MUST BE DISMISSED.**

   1. **Plaintiff's Alleged Reporting Was Not Made in "Good Faith" as Required By the Pennsylvania Whistleblower Law.**

   In the interest of judicial economy these Defendants adopt and incorporate by reference the arguments set forth in the Brief Supporting John Onorato's Motion for Summary Judgment as well as those of the County of Erie and the County of Erie Office of Children and Youth.

   2. **Plaintiff's Claim for Violation of the Pennsylvania Whistleblower Law Must Be Dismissed, as Plaintiff Cannot Demonstrate That Her Discharge Was Motivated By Her Claims Against PW or Testimony on July 28, 2004 and That the Activity She Reported Constituted "Wrongdoing."**

In the interest of judicial economy these Defendants adopt and incorporate by reference the arguments set forth in the Brief Supporting John Onorato's Motion for Summary Judgment as well as those of the County of Erie and the County of Erie Office of Children and Youth.

C.  **PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE AGAINST SCHENKER, LIEBEL AND CALLAN MUST BE DISMISSED, AS THEY WERE NOT HER EMPLOYER, DID NOT DISCHARGE HER, AND PLAINTIFF WAS A MEMBER OF A UNION PROTECTED BY A COLLECTIVE BARGAINING AGREEMENT.**

In *Geary v. United States Steel Corp.*, 319 A.2d 174 (1974), the Pennsylvania Supreme Court established an exception to the at-will employment doctrine, allowing a plaintiff to sue her employer where her discharge violates clear mandates of public policy. In *Phillips v. Babcock & Wilcox*, 503 A.2d 36 (Pa. Super. 1986), the Plaintiff attempted to extend the coverage of this judicially created protection and declare the cause of action available to union employees who were otherwise protected from wrongful discharge by collective bargaining agreements. Analyzing the Supreme Court's decision in *Geary*, the Superior Court in *Phillips* held that the purpose of *Geary* was to provide a remedy for employees with no other recourse against wrongful discharge. In holding that a union employee has no right to sue her employer for wrongful discharge, the Superior Court stated:

> Furthermore, we are not persuaded by appellant's argument that the wrongfully discharged at-will employee has greater remedies available in a civil action than does a union employee under a collective bargaining agreement since a civil court could award punitive damages. While the at-will employee may be entitled to punitive damages in a civil action, he does not have the ability to obtain some of the remedies available to union members; such as reinstatement to his position, which is a commonly provided remedy in labor agreements. Thus, we find that a difference in remedies is not enough to justify an extension of the coverage of the wrongful discharge action.
>
> Finally, in deciding not to extend the wrongful discharge action to employees who are otherwise protected by contract or statute, we must take into consideration the strong public policy which favors the right of parties to enter into contracts. In the instant case, the union and appellee in their agreement decided the remedies that would be available, and provided that those remedies would be final and binding. This intent is expressly set forth in the agreement and, therefore, the

6

> remedies available should be preclusive of any others. *Aughenbaugh v. North American Refractories Co.*, 426 Pa. 211, 231 A.2d 173 (1967).
>
> Therefore, because the wrongful discharge action in Pennsylvania was judicially created to protect otherwise unprotected employees from indiscriminate discharge and to provide unorganized workers a legal redress against improper actions by their employers, we hold that an action for the tort of wrongful discharge is available only when the employment relationship is at-will. *Geary*, *supra*.

*Phillips*, 503 A.2d at 37-38 (footnotes omitted).

In the case at bar, to the extent Abby Conley could have a potential wrongful discharge claim against her employer, she cannot maintain a wrongful discharge claim against these Defendants. Neither Schenker, Liebel nor Callan were Conley's employer at the time of her separation from employment. They, themselves, were employees of the County, as county executive, director of OCY and personnel director, respectively. Furthermore, Plaintiff is required to demonstrate that her discharge from employment somehow violates public policy. *See, Geary*, *supra.* As set forth at length above, the Plaintiff cannot demonstrate that the reasons for her discharge violate public policy. Finally, Plaintiff was not an at-will employee, as she was a member of The American Federation of State, County and Municipal Employees, AFL-CIO, and has filed a union grievance. On the Grievance Form submitted on behalf of Abby Conley, the union indicated that her "constructive discharge" was a "clear violation of Article 22, Section 22.1" which states that the employer "shall not demote, suspend, discharge or take disciplinary action against any employee without just cause . . ." *See, Grievance Form dated September 24, 2004, App. Ex. 26.*

Accordingly, for the number of reasons identified above, Plaintiff's claims for wrongful discharge against Schenker, Liebel and Callan must be dismissed.

**D.    RICHARD SCHENKER IS ABSOLUTELY IMMUNE FROM LIABLITY FOR PLAINTIFF'S CLAIMS OF DEFAMATION, AS HE IS A "HIGH PUBLIC OFFICIAL."**

7

Under Pennsylvania law, "the doctrine of high public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation provided the statements made by the official are made in the course of his official duties and within the scope of his authority." *See, McErlean v. Borough of Darby*, 157 F.Supp. 2d 441, 446 (E.D. Pa. 2001). The doctrine of absolute immunity for high public officials "rests upon...the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of the uncompensated harm to the plaintiff's reputation." *Lindner v. Mollan,* 677 A.2d 1194, 1195 (1996). Whether a person is a high public official depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Lindner,* 677 A.2d at 1198, citing, *Montgomery v. City of Philadelphia,* 140 A.2d 100, 102 (Pa. 1958).

In *Lindner*, the mayor stated to the councilman-plaintiff, "...and I'll say it right to your face; you're the village idiot...you've been dipping into the till. I know for a fact. And I know you know." *Lindner,* 677 A.2d. at 1195. A local television station was videotaping the meeting and members of the print media and general public were also in attendance at the council meeting. The Pennsylvania Supreme Court affirmed the Commonwealth Court's decision granting the mayor absolute immunity for the statements he made at the borough council meeting. *Id.* at 1199.

Although there has not been a case involving a county executive, it is certain that such an individual would be considered similarly to a mayor or district attorney and granted absolute immunity.

The comments attributed to Schenker contained in the article were made in the course of his duties or powers and within the scope of his authority. As the County Executive, Schenker

8

was ultimately responsible for the operation of county government and would be called to task for its conduct during his administration. Without a doubt, the statements made by Schenker were closely related to his official duties, and Schenker is entitled to absolute immunity.

**E.  AS A PUBLIC FIGURE, PLAINTIFF CANNOT MEET THE BURDEN OF PROVING ACTUAL MALICE TO SUSTAIN HER DEFAMATION CLAIM AGAINST ONORATO, IN PART BECAUSE ONORATO'S STATEMENTS WERE TRUE.**

To the extent that Plaintiff is making a claim against Schenker for any of the statements attributed to John Onorato in the *Erie Times-News* or attributed to himself in conjunction with Onorato, Schenker incorporates by reference the arguments made by Onorato in his Brief in Support of his Motion for Summary Judgment.

## IV.  CONCLUSION

Defendants Richard Schenker, Debra Liebel and Peter Callan respectfully request this Honorable Court to dismiss all claims against him and enter judgment in his favor and against Abby B. Conley.

    Respectfully submitted,

    **LAW OFFICE OF JOSEPH S. WEIMER**

    By */s/ Edmond R. Joyal, Jr.*
        Edmond R. Joyal, Jr. Esquire
        Pa. I.D. No. 65907
        Attorneys for Defendants, Richard Schenker, Debra Liebel and Peter Callan, Individually
        Law Office of Joseph S. Weimer
        975 Two Chatham Center
        Pittsburgh, PA  15219
        412-339-3098

## CERTIFICATE OF SERVICE

I, Edmond R. Joyal, Jr., Esquire, hereby certify that a true and correct copy of the foregoing **Brief in Support of Motion for Summary Judgment** has been served by First Class Mail, postage pre-paid, upon the following parties on this 10th day of April, 2006.

Anthony Angelone, Esquire
Vendetti & Vendetti
3820 Liberty Street
Erie, PA  16509
*(Counsel for Plaintiff)*

Timothy D. McNair, Esquire
Law Office of Timothy D. McNair
821 State Street
Erie, PA  16501
*(Counsel for Plaintiff)*

Mark R. Lane, Esquire
Dell, Moser, Lane & Loughney, LLC
525 William Penn Place, Suite 3700
Pittsburgh, PA  15219-1707
*(Counsel for Defendant, John A. Onorato, Esquire)*

Richard A. Lanzillo, Esquire
Knox McLaughlin Gornall & Sennett, P.C.
120 West 10th Street
Erie, Pennsylvania  16501
*(Attorney for County of Erie, Erie County Office of Children & Youth,
a/k/a Erie County Child Welfare Service, and Richard Schenker, Peter Callan and Debra Liebel, in the official capacities)*

**LAW OFFICE OF JOSEPH S. WEIMER**

BY: */s/ Edmond R. Joyal, Jr.*
    Edmond R. Joyal, Jr., Esquire
    Pa. I.D. #65907
    Attorney for Defendants, Richard Schenker
    Peter Callan and Debra Liebel, Individually
    Law Office of Joseph S. Weimer
    975 Two Chatham Center
    Pittsburgh, PA  15219
    (412) 338-3098