IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| ABBY B. CONLEY, | : | **JURY TRIAL DEMANDED** |
|     Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| COUNTY OF ERIE, ERIE COUNTY | : | |
| OFFICE OF CHILDREN AND YOUTH, | : | |
| a/k/a ERIE COUNTY CHILD WELFARE | : | |
| SERVICE, RICHARD SCHENKER, | : | |
| individually and in his capacity as County | : | |
| Executive of Erie County, Pennsylvania, | : | |
| PETER CALLAN, individually and in his | : | |
| capacity as Erie County Director of Personnel, | : | |
| DEBRA LIEBEL, individually and in her | : | |
| capacity as Executive Director, Erie County | : | |
| Office of Children and Youth, a/k/a Erie | : | |
| County Child Welfare Service and JOHN A. | : | CIVIL ACTION NO. 05-76E |
| ONORATO, ESQUIRE, individually and in | : | |
| his capacity as Erie County Solicitor | : | |
|     Defendants | : | |

## **PLAINTIFF'S PRE-TRIAL NARRATIVE STATEMENT**

NOW comes the Plaintiff, Abby B. Conley, by her attorneys, Timothy D. McNair, Esquire and Anthony Angelone, Esquire, and, pursuant to the Court's Order of February 6, 2006, submits the within Pre-Trial Narrative Statement in accordance with WD PA. L.R. 16.1.4 A:

### **1. STATEMENT OF MATERIAL FACTS TO BE OFFERED AT TRIAL.**

Plaintiff, Abby B. Conley, was employed in various capacities with the Defendant, County of Erie for approximately thirteen (13) years. For the last four of those years, Ms.

Conley served as a Case Aide in the Department of Human Services Office of Children and Youth. A Case Aide is a non-degreed individual who assists case workers in the performance of their case management duties, including supervising visitation, transporting children, recording observations and reporting their observations to the Court for consideration in the Court's decisions regarding the disposition of children who have been adjudicated dependant under either the Child Protective Services Law or the Juvenile Act.

Until June, 2004, Ms. Conley received better than fully satisfactory performance evaluations and had received commendations for her efforts in assisting other employees of the office. In mid June, 2004, Ms. Conley, upon transporting children to a supervised visit at the OCY Facility at Lovell Place, observed the case worker, "PW"[1] grabbed the face of the three-year old girl and shook it back and forth, saying in a loud voice "no, no, no!" Although the child was not injured, Plaintiff felt that the actions of the case worker were inappropriate. She attempted for the next week to report this to her immediate supervisor, Susan Deveney, but Ms. Deveney was either not available or not responsive. On the sixth business day, Ms. Conley reported her observation to another supervisor, who took no action. Frustrated with the refusal of the Agency to even look into an incident of a child under its protection being roughly treated by one of its own employees, Ms. Conley reported the incident to "Child Line," an anonymous reporting system established by

---

[1] This case worker is, at the request of Defendants, identified only by initials; however, Plaintiff does not agree that the case worker's identity needs to remain secret or is protected by law.

statute to receive reports of suspected child abuse under the Child Protective Services Law.

The referral to Child Line resulted in an investigation conducted by Shara Saveikis, of the Pittsburgh Office of the Department of Public Welfare. On June 29, 2004, Ms. Saveikis traveled to Erie, interviewed Plaintiff, "PW" and observed the interactions between Plaintiff and the child in question and PW and the child in question. Although Ms. Saveikis noted that the child appeared to be afraid of PW, PW "calmly" denied Plaintiff's report and, based on the lack of an admission, lack of physical injury and lack of corroboration of Plaintiff's report, the incident was determined to be "unfounded."[2]

As noted above, among Plaintiff's duties is the preparation of reports for the Court. These reports, called "court summaries" are produced on a template calling for specific information regarding the observations of the employee regarding their interaction with the persons involved in the case. Ms. Conley, acting as a Case Aide in a case under a different social worker, Michelle Schetter, but under the same supervisor, Susan Deveney, wrote two court summaries in connection with a hearing originally scheduled in April, 2004 involving twin infant girls who had been adjudicated dependent due to unexplained serious injuries shortly after their birth. Ms. Conley observed visits between the father and the twin girls and the mother and the twin girls. She authored two court summaries. The first, regarding the father, was lengthy and contained a number of negative opinions and unfavorable observations of the father's interaction with the children. The court summary

---

[2] The fact that a report is deemed "unfounded" does not mean that it did not occur or that the investigation has concluded that the reporter is providing false information. (Saveikis deposition, p. 19)

regarding the mother was also, as drafted, lengthy but it contained a number of positive opinions and favorable observations made by the Plaintiff regarding the mother's interaction with the twins. After a meeting between Plaintiff and Susan Deveney, Plaintiff was instructed to remove a significant amount of information from the court summary regarding the mother, which Plaintiff did. Plaintiff was also instructed to submit the court summaries as an attachment to an e-mail, rather than just providing printed copies, which was the normal procedure. Plaintiff resubmitted the amended court summaries by email, also printing out a copy of each and signing the top sheet for submission to court. The court summary regarding the mother was subsequently further altered before it was submitted to court. Specifically, on the second page of the summary, the Plaintiff's statement, "the mother clearly excels in her parenting abilities," and other favorable observations were removed to give the court summary a less favorable tone.

The case involving the twins was hotly contested by the parents of the children, the grandparents of the children and a number of OCY employees, in opposition to Deveney and Schetter, who moved the court to change the goal of the case to terminate the parental rights so that the adorable, white, infant girls could be adopted by strangers. Plaintiff learned of the alteration of her court summary regarding the mother from a CASA (Court Appointed Special Advocate) worker who asked Plaintiff why the court summary for the mother did not contain favorable information. Plaintiff replied that it did contain significant favorable information. Upon further inquiry, Plaintiff became aware of the alteration of the court summary and informed the CASA worker of what had happened.

The case was scheduled for the "change of goal" hearing on July 28, 2004 before the Honorable Elizabeth K. Kelly, Erie County Court of Common Pleas Judge. Plaintiff had been subpoenaed by the mother to appear at the hearing. In fact, two subpoenas were delivered to Plaintiff, one served upon the Office of Children and Youth, as is customary, which was not given to the Plaintiff and the other personally by the mother the day before the hearing. Shortly after the delivery of the subpoena by the mother, Plaintiff's supervisor provided her with the original subpoena served on OCY. Plaintiff had previously been instructed that she was not to attend the hearing unless she had a "subpoena in her hand." Prior to the hearing, on July 19, 1004, Ms. Conley was called to a meeting with administrators Char Kolupski and Pamela Biroscak, who had noted that the mother's attorney listed his reason for calling Plaintiff as a witness that Plaintiff was prevented from offering favorable testimony about his client. At this time, Ms. Conley explained the issue regarding the court summaries.

At the hearing of July 28, 2004, Plaintiff was called as a witness and at the direction of the court, testified regarding the alteration of her court summary after it had been signed. The court, taking into consideration that and other evidence, ruled against the Agency and directed the Agency to pursue a program to reunite the twins with their parents. This has now been accomplished, the family is reunited and the case is closed.

This "loss" came as a surprise and an embarrassment to the Agency, which attempts to maintain tight control over the evidence presented to the court, often presenting evidence on an ex parte basis without notice to other interested parties. The hearing

5

concluded at the end of the day on Wednesday, July 28th. On Monday, August 2, the OCY solicitor, Michael Cauley, sought out then County Solicitor, Defendant, John A. Onorato, seeking permission to have all of Plaintiff's e-mails and computer documents from January 1, 2004 undeleted and printed out for his review. On August 3, Debra Liebel and others sought to ally themselves with the DPW, calling the Western Region Representative and openly discussing Plaintiff's future with OCY, lamenting that "there is nothing but raving information in her personnel file." Cauley then proceeded to conduct a biased and one-sided "investigation," the purpose of which was not to determine what happened in the hearing involving the twins, but solely to generate a rationale for taking action against Plaintiff. Cauley did not conform to good personnel practices, as admitted by Defendant, Callen, in that he did not interview any of the parties involved to determine how Mr. Villella came to his knowledge of the alteration of the court summary. Cauley concluded that Plaintiff had, prior to the hearing, provided Mr. Villella, the attorney for the twins' mother, with a copy of the court summary. This conclusion, however, is incorrect and is belied by the transcript which clearly reflects that Mr. Villella asked Plaintiff for the document during her testimony and then requested a copy from the court.

It should be noted that dependency proceedings such as those involving the twins are not considered to be adversary proceedings. All interested parties are brought before the court to allow the court to determine the best interests of the children under protection. Traditionally, there has never been a prohibition on attorneys discussing evidence and testimony with OCY employees and, in fact, under the Juvenile Act, the parents have every

right to the contents of their file. It should further be noted that Mr. Cauley had Susan Deveney, who was accused of making the alteration, present in court on July 28 but that he did not call her to testify.

OCY and Cauley were very concerned about the events of July 28th, particularly insofar as they might impact OCY's relationship with the judge before whom they frequently appeared. Cauley had no reasonable explanation as to why he wanted to root through Plaintiff's e-mail, except that he thought that Plaintiff "might have" e-mailed the document to Attorney Villella. However, he did not restrict his search to evidence regarding that, but went on an uncharted fishing expedition to attempt to gather any piece of dirt he could on Ms. Conley.

Among the approximately two thousand (2,000) documents Cauley reviewed, he came across a document he interpreted as a revelation of what he terms a "prognostic detention order" which is, apparently, an ex parte order to detain a child even before it is born. Shara Saveikis of the western region of the Department of Public Welfare had never seen this procedure used and did not know of any other agency that used it.[3] In the case involving the child Plaintiff witnessed being roughed up by PW, the mother was pregnant. Deveney and PW had secured the entry of an order providing that the child would be detained at birth and placed in the custody of its paternal grandmother. The order noted that the mother was in agreement with this procedure, although it also noted that she had

---

[3] This procedure is apparently only used in Erie County.

threatened to go to Canada if the child was going to be placed in foster care.[4]  It is a standard procedure of OCY to have one of these "prognostic detention orders" entered in any case where a woman is pregnant and already has one or more children under the supervision of OCY.  In this case, the caseworker had not been servicing the family as she was required to do under the direction of the court and it appeared that she was simply was going to take the path of least resistance and seek termination of the parental rights of the parents of these children, including the newborn.[5]   The child was born on or about July 7, 2004.

On June 4, 2004, Plaintiff received an e-mail from a friend, a former OCY employee who had been the case worker on the case involving the as yet unborn child.  In an e-mail exchange beginning at 11:12 a.m. on Friday, June 4th, Plaintiff complained to her former co-worker about the way the case was being handled.  The former case worker was concerned that the case had not been adequately serviced and was critical of the approach of the new caseworker, PW, and concerned that the expectant mother was not aware of a "kinship placement" program with an abbreviated investigation requirement permitting placement of the child with relatives rather than in foster care.  The e-mail exchange ended on Friday at 2:29:53 P.M. with the Plaintiff venting "Patty has detention letters at all of the local hospitals. [VW] does not see this coming."  The e-mail exchange resumed the following

---

[4]  If a newborn infant is placed in foster care, it is rare that it is returned to its natural parents since the foster parents generally seek to adopt as soon as possible.

[5]  Evidence indicates that the caseworker had spent less than three hours over the preceding four months on this case.

Monday, June 7th when the Plaintiff received a message from the former worker stating "she will." In the meantime, however, the former caseworker had taken it upon herself, with no encouragement from the Plaintiff, to speak to the mother about her options. Plaintiff had not seen any detention order. The detention order entered, as noted above, stated that the child was to be turned over to the paternal grandmother and that the mother was in agreement with this. The former caseworker was acting under a misimpression. At no time did the Plaintiff encourage the former caseworker to take any action.

Cauley, however, interpreted this e-mail as a deliberate attempt to encourage the expectant mother to flee the jurisdiction even though he had actual knowledge of the actual contents of the order and knew that the mother was in agreement with the order, although she had not been informed of its existence. [6]

Cauley seized on this e-mail exchange as an "egregious breach of confidentiality," and called for Plaintiff's immediate dismissal. Cauley also cited alleged violations of the computer use policy and also the fact that Plaintiff had made "false and baseless" allegations against PW. [7] Cauley also sough the assistance of the western region of DPW,

---

[6] Cauley also knew that the expectant mother did not flee and that the newborn was with her grandmother. It is not OCY policy that these orders always remain secret and there is no provision in the law or Rules of Court for making them secret. This order, in fact, was not noted to be confidential in any respect.

[7] It should be noted that PW was previously reprimanded for grabbing a child by the face and striking him. This report was well-corroborated. She was also reprimanded for failing to report an instance of abuse of which she was aware, a criminal offense. She encouraged the perpetrator to cover up the occurrence and not to send the child to school. The child was left in the care of the abusive parent as a result.

requesting Shara Saveikis to write a letter against Plaintiff. Saveikis' letter of August 30, 2004 described Plaintiffs affect as "labile," and stated "the allegations of child maltreatment could not be substantiated partially due to the questionable credibility of Ms. Conley as evidenced by the behaviors outlined above." However, Saveikis stated at her deposition that the real reason the Plaintiff's complaint was determined to be unfounded was the lack of injury to the child. She observed the child to be apprehensive in the presence of the caseworker, which she found unusual. She stated that just because a report is unfounded does not mean the conduct complained of did not occur, it simply means that no injury could be documented.

Plaintiff will prove that her actions were reasonable and undertaken in good faith, and theat the County acted in retaliation when it terminated her employment.

## II. DAMAGES

As a result of her treatment by the County, Ms. Conley has suffered great humiliation and embarrassment. She has been held out to public scorn by Mr. Onorato's statement that the payment of nearly $60,000 in County funds to a law firm was "in defense of the children," as if Ms. Conley was a perverted child molester. Ms Conley never acted with anything but the interests of the children at heart and sought only to get the system to work as intended. Her complaints to her superiors fell on deaf ears. She had to "blow the whistle" in order to prevent the needless and tragic destruction of families.

Ms. Conley has lost wages as follows:

ABBY B. CONLEY
WAGE LOSS REPORT

| YEAR | ANNUAL SALARY | WEEKLY RATE | PERIOD OF LOSS (WEEKS) | TOTAL |
|---|---|---|---|---|
| 2004 | $27,437.00 | $527.64 | 9/11/04-12/31/04 (16) | $ 8,422.24 |
| 2005 | $28,055.00* | $539.52 | 1/01/05-12/31/05 (52) | $28,054.33 |
| 2006 | $28,686.00** | $553.02 | 1/01/06-4/30/06 (17) | $ 9,401.34 |
| | | | **SUBTOTAL** | **$45,897.91** |

LESS:

| | |
|---|---|
| Earnings - Erie County Farms (March 23, 2004 - June, 2004) | ($ 4,538.50) |
| Earnings - Courier Solutions of America (June, 2004 - current) | ($ 9,725.47) |
| Earnings - Alicia Raynor Services (November, 2004 - current) | ($ 1,440.00) |
| | **$30,193.94** |

* Includes a rate increase of 2.25% pursuant to Article 21 of the Local 2666 and District Council of the AFSCME collective bargaining agreement effective January 1, 2003 through December 31, 2006.

**Includes a rate increase of 2.50% pursuant to Article 21 of the Local 2666 and District Council of the AFSCME collective bargaining agreement effective January 1, 2003 through December 31, 2006.

### III. WITNESSES

| | Liability | Damages |
|---|---|---|
| Gary Lucht<br>Erie County Office of Children & Youth<br>154 West 9th Street<br>Erie, PA 16501<br>(814) 451-6600 | X | X |
| Peter Callan | X | X |

| | | |
|---|---|---|
| Deanna Cosby<br>Mecklenberg County Department of<br>Social Services<br>Wallace H. Kuralt Centre<br>301 Billingsley Road<br>Charlotte, NC 28211<br>(704) 336-3694 | X | X |
| Ed Palattella<br>Erie Times News<br>205 West 12th Street<br>Erie, PA 16534<br>(814) 453-4691 | X | |
| Patrick Howard<br>Erie Times News<br>205 West 12th Street<br>Erie, PA 16534<br>(814) 453-4691 | X | |
| Honorable Elizabeth Kelly<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 16501<br>(814) 451-6000 | X | |
| Lisa Kobusinski<br>1131 East 30th Street<br>Erie, PA 16504<br>(814) 459-9253, ext. 169 | X | |
| Lisa Babel<br>Collaborative Visitation Service (CVS)<br>(814) 866-4626 | X | |
| Bonnie Carrick<br>Court Appointed Special Advocate (CASA)<br>104 East 2nd Street, Eighth Floor<br>Erie, PA 16507<br>(814) 877-2272 (w)<br>(814) 835-7262 (h) | X | |
| Nzinga Cates<br>(814) 824-4252 | X | |

| | |
|---|---|
| James Casella, Sr.<br>1735 Emery Drive<br>Erie, PA 16509<br>(814) 864-8860 | X |
| Gerald J. Villella, Esquire<br>900 State Street, Suite 310<br>Erie, PA 16501<br>(814) 453-4651 | X |
| Pam Mininger<br>3751 Cumberland Road<br>Erie, PA 16510<br>(814) 453-4846 | X |
| Linda Heinz<br>(814) 899-6633 | X |
| Vicky Wilson | X |
| Fatema Mohamid<br>1102 East 28th Street<br>Erie, PA 16504<br>(814) 453-4846 | X |
| Matt Granger | X |
| Karen Dorich<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 16501<br>(814) 451-6000 | X |
| Stephanie Carideo<br>712 Bonnie Brae<br>Erie, PA 16511<br>(814) 899-9393 | X |
| Karen Bartol<br>(814) 725-9875 | X |
| Ian Murray, Esquire<br>1001 State Street<br>Erie, PA 16501<br>(814) 451-0200 | X |

| | |
|---|---|
| W. Atchley Homes, Esquire<br>3820 Liberty Street<br>Erie, PA 16509<br>(814) 868-8541 | X |
| Sue Weber<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 451-6000 | X |
| David Agresti, Esquire<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 16501<br>(814) 451-6000 | X |
| Shawn Kitcey | X |
| Mary Jo Cline<br>Erie County Office of Children & Youth<br>154 West 9th Street<br>Erie, PA 16501<br>(814) 451-6600 | X |
| Patricia Wozniak | X |
| Ann Bloxdorf<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 16501<br>(814) 451-6000 | X |
| Sue Deveney<br>Erie County Office of Children & Youth<br>154 West 9th Street<br>Erie, PA 16501<br>(814) 451-6600 | X |
| David Dows | X |
| Shara Saveikis<br>Department of Public Welfare<br>Office of Children, Youth and Families<br>State Office Building<br>Pittsburgh, PA 15222 | X |

| Name / Address | Col1 | Col2 | Col3 |
|---|---|---|---|
| Hon. Fiore Leone<br>Erie County Council<br>Courthouse<br>Erie, PA 16501<br>(814)451-6000 | X |  | X |
| Charles J. Barber, Esquire<br>Erie County Department of Human Services<br>9th & Sassafras<br>Erie, PA 16501<br>(814)451-6000 | X |  |  |
| Michael Kazmer<br>Department of Public Welfare<br>Office of Children, Youth and Families<br>State Office Building<br>Pittsburgh, PA | X |  |  |
| Debra Liebel | X |  |  |
| Bradley Foulk, Esquire<br>Erie County Courthouse<br>140 West 6th Street<br>Erie, PA 16501<br>(814) 451-6000 | X |  |  |
| Michael Cauley, Esquire<br>8215 Millfair Road<br>McKean, PA 16426 | X |  |  |
| John A. Onorato, Esquire<br>2171 West 38th Street<br>Erie, PA 16508<br>(814) 833-3200 | X |  |  |
| Kim Peebles<br>Erie County Office of Children and Youth<br>154 W. 9th St.<br>Erie, PA 1650(814)451-6000 | X |  |  |
| Richard Schenker | X |  |  |
| Carol Clapp<br>(814)868-4018 |  | X |  |

15

## EXHIBITS

1. Plaintiff's personnel file.

2. Pre-hearing Narrative filed by Attorney Gerald Villella; Gerald Villella In Re: C-S for 7/28/04 hearing.

3. C-S court summary as submitted to court.

4. C-S court summary as assigned.

5. Transcript of 7/28/04 hearing in Re: see twins.

6. Hand written notes dated 8/3/04 "telephone interview - Shara Savchikis (sic)"

7. Typed notes "Re: conference call with Shara Savchikis (sic) and Mike Kazmer on 8/3/04."

8. Transcript of hearing In Re: D.B., 6/2/04.

9. Deposition of Shara Saveikis.

10. Letter dated October 28, 2005 and Certificate of Appreciation signed by Richard Schenker.

11. Transcript of Deanna Cosby deposition.

12. Transcript of Debra Liebel deposition.

13. Transcript of John A. Onorato deposition.

14. Transcript of Michael E. Cauley deposition.

15. Transcript of Patricia Wozniak deposition.

16. Transcript of Richard Schenker deposition.

17. Transcript of Peter Callen deposition.

18. Redacted file In Re: D.B., J.B. and M.B, Children of V.W. (Redacted)

19. Dates of contact reports filed by Plaintiff in connection with In Re: D.B.,

    and In Re: J.B.

20. Transcript of January 4, 2006 hearing on Motions to Compel and for Protective Order.

21. Various emails from OCY employees evidencing general disregard of the Erie County Computer Use Policy.

22. Letter from Michael Cauley, Esquire, to John A. Onorato dated August 20, 2004, with attachments.

23 Letter from Hon. Elizabeth K. Kelly to Debra Liebel dated July 19, 2004, with attachment.

24. Emails from Susan Deveney to Plaintiff directing that Court Summaries be sent as an email attachment.

25. Any document identified by any Defendant and their Pre-Trial Narrative.

26. Plaintiff reserves the right to identify and present documents discovered. after the filing of this Pre-Trial Narrative Statement and in particular documents which the Court may order production of subsequent to this filing.


    Respectfully submitted,

    LAW OFFICES OF TIMOTHY D. McNAIR


    By: ___s /Timothy D.McNair_____
        Timothy D. McNair, Esquire
        821 State Street
        Erie, PA 16501
        (814) 452-0700

        VENDETTI & VENDETTI

By s/ Anthony Angelone
    Anthony Angelone, Esquire
    Attorney for Plaintiff
    3820 Liberty Street
    Erie, Pennsylvania 16509
    (814) 868-8541
    PA 56206
    aangelone@vendettilaw.com
    (814) 452-0700